

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-412-CR

PATRICIA LOUISE HARKINS                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

In four points, Appellant Patricia Louise Harkins appeals her conviction for misdemeanor driving while intoxicated (DWI).  We affirm.

### II. Factual and Procedural History

On March 25, 2006, a concerned citizen called 911 to report Harkins's erratic driving.  Officer Kenneth Klein responded, administered several field

sobriety tests to Harkins, and ultimately arrested her for DWI.  On the night of her arrest, two chemical substances—carisoprodol, the generic name for the prescription drug Soma, and meprobamate, a metabolized byproduct of carisoprodol—were found in her blood.  The fact issue at trial was whether Harkins was intoxicated by Soma or whether she was impaired by physical ailments including chronic pain, nerve damage, and drowsiness caused by sleep apnea.

Following a two-day trial, the jury deliberated for over five hours before finding Harkins guilty of DWI.  After hearing argument on punishment, the trial court sentenced Harkins to a $750 fine, court costs, and 150 days in jail probated for two years.[1]  This appeal followed.

### III. Discussion

In her combined first and second points, Harkins broadly complains that the evidence was legally and factually insufficient to support the jury's verdict. In her argument under these points, and also under her combined third and fourth points, she complains that the trial court failed to charge the jury with the complete, statutory definition of "dangerous drug," that the State presented

---

[1]The trial court also ordered Harkins to complete the DWI Education Program, the Substance Abuse Evaluation, and any required counseling; to attend the Victim Impact Panel; and to abide by other conditions of probation.

no evidence to prove under the complete definition that the substances found in Harkins's blood on the night of her arrest were dangerous drugs, and that the failure to present the complete definition destroyed her right to present a defense.[2]  She also complains, in her fourth point and in part of her third point, that the trial court made an improper comment on the weight of the evidence and that this also had the effect of destroying her right to present a defense.

## A. Jury Instructions

### 1. Standard of Review

---

[2]Harkins also contends that the information failed to set forth which specific controlled substance or dangerous drug allegedly rendered her intoxicated or that the substance alleged to be a dangerous drug bore the legend "Caution: federal law prohibits dispensing without a prescription."  To the extent Harkins twice argues, in a single sentence without citation to authority under points one and two and again under points three and four, that the jury charge also failed to set forth the specific controlled substance or dangerous drug, her argument is inadequately briefed, and we decline to address it.  *See* TEX. R. APP. P. 38.1(h); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001); *Mosley v. State,* 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).  And a defendant must raise an objection to the form or substance of a charging instrument before the date on which trial commences or she waives the complaint.  TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005); *Teal v. State*, 230 S.W.3d 172, 177, 179 (Tex. Crim. App. 2007); *Fisher v. State*, 887 S.W.2d 49, 54 (Tex. Crim. App. 1994), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).  The record does not reflect that Harkins objected to the information before the trial began.  Therefore, Harkins failed to preserve this error.  *See* TEX. R. APP. 33.1.

3

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

**2. "Dangerous Drug" Instruction**

The trial court's charge to the jury must set forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). Thus, the trial court must instruct the jury on each element of the offense charged and each statutory definition that affects the meaning of an element of the offense. *McIlroy v. State*, 188 S.W.3d 789, 797 (Tex. App.—Fort Worth 2006, no pet.); *Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.). If a phrase, term, or word that the jury must use to properly resolve the issues is statutorily defined, the trial court must submit the statutory definition to the jury. *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd).

The health and safety code defines "dangerous drug" as follows:

(2) "Dangerous drug" means a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act). The term includes a device or a drug that bears or is required to bear the legend:

4

(A) "Caution: federal law prohibits dispensing without a prescription" or "Rx only" or another legend that complies with federal law . . . .

TEX. HEALTH & SAFETY CODE ANN. § 483.001(2) (Vernon Supp. 2008). The jury charge, however, omitted the language "and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act)" and the referenced schedules and penalty groups. Harkins concedes that she failed to object to this omission.

### 3. Harm Analysis

Unobjected-to charge error will not result in reversal of a conviction in the absence of egregious harm. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006). Assuming without deciding that it was error for the trial court to define dangerous drug without reference to the schedules and penalty groups, we nevertheless conclude that Harkins was not harmed.

Egregious harm is a difficult standard to prove and must be determined on a case by case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). In examining the record for egregious harm, we must consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the final arguments of the

5

parties, and (4) any other relevant information revealed by the record of the trial as a whole. *Allen*, 253 S.W.3d at 264 ; *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264; *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007).

We turn first to the evidence. Harkins admitted that she took the medication Soma, and it was undisputed that two chemical substances—carisoprodol, the generic name for Soma, and meprobamate, a metabolized byproduct of carisoprodol—were found in her blood on the night of her arrest. Harkins concedes that carisoprodol is not included in the schedules or penalty groups in the Texas Controlled Substances Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.032, 481.102–.105 (Vernon 2003 & Supp. 2008). Therefore, if the jury found carisoprodol to fall within the rest of the definition of dangerous drug, the substance was clearly a dangerous drug.[3]

---

[3]Harkins argues that meprobamate is a controlled substance, not a dangerous drug and, because meprobamate is a byproduct of carisoprodol, carisoprodol must therefore also be a controlled substance. However, Harkins concedes that carisoprodol is not included in the schedules or penalty groups

6

Thus, with regard to carisoprodol, Harkins could not have been harmed by the omission from the definition of dangerous drug.[4]

In general, the closing arguments focused on the question of whether Harkins's medication, as opposed to her medical conditions, caused her erratic driving. While Harkins's attorney stated in passing that the jury would have to determine whether the substance was a dangerous drug, counsel used the majority of the closing argument to argue that Harkins was not intoxicated because she had only therapeutic amounts of the drug in her system and that her erratic driving was caused by sleep apnea or nerve damage.[5]

---

in the Texas Controlled Substances Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.032, 481.102−.105. Further, other courts have recognized that carisoprodol is a dangerous drug. *See Chambers v. State*, No. 11-03-00035-CR, 2004 WL 404125, at *2 (Tex. App.—Eastland Mar. 4, 2004, pet. ref'd) (not designated for publication); *Approximately $42,850.00 v. State*, 44 S.W.3d 700, 701 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

[4]Although the State concedes that meprobamate is a controlled substance, the trial court had directed a verdict on the controlled substance means of intoxication. Therefore, by the end of the case, the parties were only disputing whether Harkins was intoxicated by means of a dangerous drug.

[5]Harkins's trial counsel argued, "Are we going to go after people with other conditions who take their medicine as prescribed? You know, there is a thing out there called reckless driving. Maybe that's what they should have done in this case, but this is not driving while intoxicated."

The State's argument followed a similar pattern. While it briefly directed the jury to the charge's definition of dangerous drug,[6] the State primarily argued that carisoprodol could cause a loss of mental and physical faculties and drowsiness and that the "obvious explanation" for Harkins's poor driving was the drug.

Further, the jury charge properly defined "intoxicated" as "not having the normal use of one's mental or physical faculties by reason of the introduction of a dangerous drug into the body" and instructed the jury that it could not convict Harkins "unless each element of the offense is proved beyond a reasonable doubt." *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003). Again, the more contested issue was whether Harkins was intoxicated by the substances in her blood, not whether those substances were dangerous drugs.

We note, finally, that although Harkins did present expert testimony that carisoprodol was not a dangerous drug, she did not argue it was not a dangerous drug because it was in fact included in the penalty groups or schedules of the Texas Controlled Substances Act. Rather, Harkins's doctor testified that carisoprodol was not a dangerous drug because it was not a "drug

---

[6]The prosecutor stated, "Looking at the Court's definition, the legal definition of a dangerous drug, it qualifies as a dangerous drug. Though their expert said it wasn't a dangerous drug, that's the medical definition. In the State of Texas in this Court, it's a dangerous drug."

8

that could kill you" or cause permanent physical or psychological harm. Thus, the presence or absence of carisoprodol on the penalty groups and schedules was "not a contested issue at all." *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985) (holding that one of the considerations in determining egregious harm is whether the error related to a contested issue); *accord Hutch v. State*, 922 S.W.2d 166, 171–72 (Tex. Crim. App. 1996).

After carefully considering the entire jury charge, the evidence, the arguments of counsel, and other relevant information, we hold that the error, if any, in the charge's definition of dangerous drug did not deny Harkins a "fair and impartial trial" or "affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *See Hutch*, 922 S.W.2d at 171–72. Accordingly, we hold that Harkins did not suffer egregious harm. We overrule this portion of Harkins's first and second points.

### 4. Judicial Comment

In her third and fourth points, Harkins contends that Paragraph IV of the jury charge was an improper comment on the weight of the evidence that diminished the State's burden of proof. Paragraph IV states, "You are

instructed that the fact that the defendant is or has been entitled to use *the* dangerous drug is not a defense to this offense."[7] [Emphasis added.]

The trial court must refrain from making any remark calculated to convey to the jury its opinion of the evidence in a particular case. TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *Hess v. State*, 224 S.W.3d 511, 514 (Tex. App.—Fort Worth 2007, pet. ref'd).

Appellant was charged with misdemeanor DWI. A person commits this offense if she is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). Section 49.01 defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, *a* dangerous drug, a

---

[7]Harkins also contends that her right to present a defense was destroyed by the trial court's failure to give the complete definition of "dangerous drug," the lack of evidence to show that carisoprodol was a dangerous drug, and the trial court's "instruction that having a prescription for the 'dangerous drug[,]'" was no defense to DWI. We have already addressed the first contention above and concluded that if there was error, it was harmless.

The voluntary taking of prescription drugs that impair mental or physical faculties is not a defense to DWI. *See* TEX. PENAL CODE ANN. § 49.10 (Vernon Supp. 2008); *Nelson v. State*, 149 S.W.3d 206, 211 (Tex. App.—Fort Worth 2004, no pet.). Therefore, Harkins's third contention is also without merit, and we overrule this portion of her third and fourth points. We address her second contention below in our sufficiency review.

combination of two or more of those substances, or any other substance into the body[.]" *Id.* § 49.01(2)(A) (emphasis added). Here, the jury charge only defined "intoxicated" with reference to "the introduction of a dangerous drug into the body." Therefore, one of the fact issues for the jury was whether Appellant had taken a dangerous drug.

Section 49.10 of the penal code provides that

In a prosecution under Section 49.03 [repealed], 49.04 [Driving While Intoxicated], 49.045 [Driving While Intoxicated with Child Passenger], 49.05 [Flying While Intoxicated], 49.06 [Boating While Intoxicated], 49.065 [Assembling or Operating an Amusement Ride While Intoxicated], 49.07 [Intoxication Assault], or 49.08 [Intoxication Manslaughter], the fact that the defendant is or has been entitled to use *the* alcohol, controlled substance, drug, dangerous drug, or other substance is not a defense.

*Id.* § 49.10 (emphasis added).

Although the language used in Paragraph IV tracks section 49.10, that language is taken out of context because section 49.10 must be read with section 49.01—"the dangerous drug" referred to in section 49.10 requires a finding by the jury under section 49.01 that Appellant had taken "a dangerous drug." As used by the trial court in its instruction in Paragraph IV, "the" dangerous drug became an improper comment on the weight of the evidence.

11

Appellant objected at trial to Paragraph IV in its entirety. Outside the presence of the jury, the trial court, defense counsel, and the State discussed the charge:

[Trial Court]:     Okay. So we are just going to proceed on dangerous drug.

[Defense]:        And we have no objection to the charge.

                         . . . .

[State]:           We do, Your Honor. Under section 49.10, we would like a no defense to be included in the court's charge.

                         . . . .

[Trial Court]:     . . . I'll put that in there.

[Defense]:        Judge, we are going to object. That doesn't apply to this scenario, Judge. That has something to do with something totally different. This has—the language in there is not prescription drugs. It says the fact the defendant has or been entitled to use—.

[Trial Court]:     A dangerous drug is not a defense.

[Defense]:        It's absolutely a defense. Tell the jury that they can't consider that is going to just basically take the defense away from—

[Trial Court]:     But it says it's not a defense in a prosecution for—

[Defense]:        But it doesn't say—

12

[Trial Court]: It says, "In a prosecution under 49.04, the fact that the defendant is or has been entitled to use the dangerous drug is not a defense."

[Defense]: Note our objection, Judge.

[Trial Court]: How do you say that it says anything else?

[Defense]: That the evidence in this case is the fact that—that, first of all, there wasn't a dangerous drug, according to our expert. . . . Their expert said they didn't know if it was a controlled substance or dangerous drug. Then they found somebody that said it was a dangerous drug. Okay. So we got that one. . . . But we have a prescription here for the substance that was found in our client's body. . . . Now, to tell the jury they can't use that as a defense, the fact that she had normal amounts in her system, . . . . You're basically telling the jury they can't consider that. That's not what the law intended by this.

. . . .

[Trial Court]: . . . that it's not a defense to intoxication. If the jury wants to say, look, she's intoxicated by this dangerous drug, but she has a prescription, well, that's not a defense to it. That's all that's saying. . . .

[Defense]: Note our objections, Judge.

[Trial Court]: Overrule your objection. I'll grant [the State's] instruction in 49.10 and it will say . . . "In a prosecution for driving while intoxicated the fact that the defendant is or has been entitled to use the dangerous drug is not a defense."

13

When the jury returned and the trial court requested objections on the charge, defense counsel merely stated, "We object to Paragraph IV."

To preserve error with regard to a jury charge, objections must be sufficiently specific to point out the errors complained of. *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 ("Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, *distinctly specifying each ground of objection*." (emphasis added)). To constitute a valid objection to jury instructions, the objection must be specific and clear enough to apprise the trial court of the nature of the objection—this specificity requirement is to enable the trial court "to know in what respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury." *Pennington v. State*, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985).

Because Harkins never apprised the trial court of her complaint with regard to the article distinction, i.e., the use of "a" rather than "the," but rather, complained broadly with regard to Paragraph IV in its entirety and its presence in the charge at all, we review her complaint under the standard for unobjected-to error. *See id.* ("It is clear then that a general objection which does not distinctly specify the claimed error in the charge is not sufficient to preserve

14

error."); *see also Almanza*, 686 S.W.2d at 171 (setting out the "egregious harm" standard).

The jury charge set out the correct elements of DWI and properly defined "intoxicated"; it partially defined "dangerous drug," as previously discussed above. The application portion of the jury charge set out

> Now, if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 25th day of March, 2006, [Harkins] did then and there operate a motor vehicle in a public place while [she] was intoxicated by not having the normal use of her mental or physical faculties by reason of the introduction of a dangerous drug into her body, then you will find [Harkins] guilty as charged.

> Unless you do so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit [Harkins] and say by your verdict, "not guilty".

The "no defense" instruction, with its improper emphasis, and then the remaining standard jury instructions followed. The trial court read the charge to the jury, and then the parties presented their closing arguments. The State argued, as its only mention of the words "dangerous drug,"

> We know that Soma, which the Defendant admitted to taking[,] is a dangerous drug. All the witnesses testified that you have to have a prescription to get these drugs. Looking at the Court's definition, the legal definition of a dangerous drug, it qualifies as a dangerous drug. Though their expert said it wasn't a dangerous drug, that's the medical definition. In the State of Texas in this Court, it's a dangerous drug.

15

The State contended in the rest of its argument that Harkins had been intoxicated by the Soma (carisoprodol) that she had admitted consuming. Harkins also addressed the "dangerous drug" issue, stating

> And as far as this dangerous drug goes, that's for y'all to decide. You know, their chief toxicologist got on that witness stand, Angela Springfield, she couldn't tell you that it was a dangerous drug, could she? She's got all these degrees . . . . And she couldn't tell you it's not a dangerous drug. If you find it's not a dangerous, State didn't meet their burden.

> . . . .

> She was not intoxicated because of carisoprodol. And in the Court's Charge it tells you in Paragraph IV, that you are instructed the fact the Defendant has been entitled to use a dangerous drug is not a defense. All that means is the fact that she had a prescription for this drug in and of itself does not entitle her. In other words, she can't come to court and say, I had a prescription[,] I'm not guilty. But their own expert along with our expert both told you she had normal amounts of that in her system. She wasn't intoxicated, folks. The erratic drive was caused by something else.

Upon review of the record set out in detail in this opinion, we conclude that the instruction, albeit improper in the manner given, was not egregiously harmful to Appellant in light of the entire jury charge, the state of the evidence, the parties' final arguments, and the other relevant information revealed by the record of the trial as a whole. *See Allen,* 253 S.W.3d at 264; *see also Nelson*, 149 S.W.3d at 211 (interpreting section 49.10 of the penal code, the "no

16

defense" provision, to include the voluntary taking of prescription drugs). We overrule Harkins's third and fourth points.

## B. Legal and Factual Sufficiency

Finally, Harkins argues that the evidence was legally and factually insufficient to prove the element of intoxication.

### 1. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is

17

manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

**2. Analysis**

A person commits the offense of DWI if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). As previously defined, "intoxicated" under the penal code involves not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. *Id.* § 49.01(2)(A). This multipart definition sets forth alternate means by which the State may prove the element of intoxication, but the substance that causes intoxication is not itself an element of the offense of DWI. *See Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004); *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003).

The evidence at trial showed as follows:

On the evening of March 25, 2006, Tony Simmons and his passenger observed Harkins's vehicle veer to the right, hit the curb, and reenter the lane

18

three times, and they called 911 to report the erratic driving. Simmons also saw Harkins's vehicle stop in the left-turn lane for a few minutes without turning; Harkins eventually pulled back onto the main road and continued driving. Harkins also narrowly avoided an accident and pulled into a driveway where she parked for two or three minutes before backing out and continuing on.

Officer Klein identified Harkins's vehicle based on Simmons's description. When he approached the vehicle, Officer Klein noticed that Harkins's eyes were heavy, her pupils were constricted, she was "very disoriented," her speech was thick, her words sounded slurred, and she had a hard time finding her driver's license and proof of insurance. Harkins told Officer Klein that she had been to dinner and was tired. When asked to get out of her vehicle, Harkins took sixty to ninety seconds to locate her shoes, and she almost fell. Once out of the vehicle, Harkins staggered and was "very unsteady."

Officer Klein, however, did not smell alcohol on Harkins. Harkins told Officer Klein that she had taken the medication Soma at dinner and that she suffered from several ailments including degenerative disk disease and nerve damage in her foot. Officer Klein administered the horizontal gaze nystagmus test but failed to detect any signs of intoxication. Officer Klein then administered the walk-and-turn test, and he testified that Harkins could not

19

maintain her balance, did not walk a straight line, failed to take heel-to-toe steps, and took an incorrect number of steps. Officer Klein next administered the one-leg-stand test, but Harkins could not complete the test because she lowered her foot immediately and had great difficulty balancing.

Concerned that Harkins's medical condition might have affected her performance on the other tests, another responding officer, Officer Hash, administered the "less physical" Romberg balance test.[8] This test required Harkins to stand with her arms to her side, look up at the sky, and estimate thirty seconds. Officer Klein testified that Harkins "almost fell over," estimated thirty-five seconds to be thirty seconds, and swayed in several directions. Officer Hash concluded that Harkins failed the test.[9]

After Harkins performed these three tests, Officer Klein formed the opinion that she was intoxicated and arrested her. Harkins consented to a blood draw.

Officer Klein conceded that Harkins was very cooperative, was visibly nervous and shaking, and maintained that she was merely tired and not intoxicated. Officer Klein had only made one previous DWI arrest in his career,

_____

[8]Officer Klein was not trained to administer this particular test.

[9]The jury also viewed the video of Harkins's performance on the field sobriety tests.

20

and he admitted that his training in field sobriety tests was designed to detect impairment from alcohol rather than prescription medicine. He had, however, eight months of experience in intake where he observed approximately twenty intoxicated individuals per night, some intoxicated by drugs and some by alcohol.

The parties also presented expert testimony. The experts agreed that carisoprodol is the generic name for Soma; that meprobamate is a metabolized byproduct of carisoprodol; and that the amounts of the substances in Harkins's blood were within a "therapeutic level."

The State's first expert, Susan Howe, holds a Ph.D. in toxicology and is a senior toxicologist at the medical examiner's office. Dr. Howe analyzed Harkins's blood and found the drugs carisoprodol and meprobamate.

Another of the State's experts was Angela Springfield, the chief toxicologist at the medical examiner's office, who holds a Ph.D. in pharmacology and toxicology. Dr. Springfield testified that carisoprodol is a prescription drug that causes muscle relaxation and, as side effects, mild sedation and slowing of responses. Further, carisoprodol could affect response time, hand-eye coordination, balance, and alertness. Dr. Springfield agreed that the drug could have a "serious impact on one's mental and physical faculties,"

21

but she did not know whether carisoprodol was a dangerous drug or a controlled substance. She added that it was "certainly a prescription item."

The State's third expert, Michelle O'Neal, a forensic chemist, testified that carisoprodol is a "dangerous drug." She also stated that carisoprodol makes people "groggy" and sleepy.[10]

Harkins's doctor, Gregory Skie, was the sole defense witness. Dr. Skie specialized in pain management and had treated Harkins for two years for chronic pain in her back and right leg. Dr. Skie testified that Harkins simply could not perform the field sobriety tests because of her preexisting physical condition. Dr. Skie disagreed that carisoprodol is a dangerous drug, although he conceded that he did not know the legal definition of that term.[11] He maintained that neither Harkins's medications nor her physical impairment would cause a problem driving.

On cross-examination, the State confronted Dr. Skie with "a document from the National Highway Traffic Safety Administration." Although the

---

[10]Erica Davis, the nurse who drew Harkins's blood at the hospital on the night of her arrest, also testified briefly for the State, apparently to establish the chain of custody of the blood samples.

[11]Dr. Skie defined dangerous drug as "[a] drug that could kill you" or "damage your brain," and "a drug that causes physical harm . . . [of] a permanent nature." O'Neal, on the other hand, was not asked how she defined the term.

document was not admitted into evidence, the prosecutor read a statement, apparently from the document: "Drug manufacturers of Soma suggest patients should be warned that carisoprodol may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks such as driving a motor vehicle[.]" Dr. Skie maintained that he did not generally think Soma caused driving impairment, but "for an individual patient in certain circumstances it could be a factor and I want them to be aware . . . so that they would not take it during times they might be tired or have other illnesses."

Harkins also offered her medical records from Dr. Margaret Mike, dated several months after her DWI arrest. Dr. Mike diagnosed and treated Harkins for sleep apnea, a disorder that interferes with breathing during sleep and causes an individual to wake up numerous times throughout the night. Dr. Mike's records indicated that she "suspect[ed] [Harkins's DWI arrest] was due to sleepiness," and she instructed Harkins to avoid driving when drowsy.

In the information, the State alleged that Harkins was intoxicated "by not having the normal use of [her] mental or physical faculties by reason of the introduction of a controlled substance, a dangerous drug, or a combination of two or more of these substances into [her] body." At the charge conference, however, the trial court ruled that the State had not presented any evidence of a controlled substance and, therefore, instructed the jury that Harkins could be

23

found guilty only if the evidence showed intoxication by use of a dangerous drug.

Harkins admitted to ingesting the prescription medication Soma, and carisoprodol was found in Harkins's blood shortly after her arrest. O'Neal testified that carisoprodol was a dangerous drug.[12] Dr. Springfield testified that carisoprodol could affect response time, hand-eye coordination, balance, and alertness, and the jury heard testimony describing (and watched the video of) Harkins's slow verbal responses and performance on the field sobriety tests. Officer Klein testified, based on his training and experience, and with knowledge of Harkins's medical condition, that he believed she was intoxicated.

Harkins presented evidence and argument that her poor performance on the field sobriety tests was due to her preexisting physical impairments or drowsiness caused by sleep apnea. However, the jury could have weighed the evidence, considered Harkins's defense, and concluded the defense was not persuasive. *See Burkett v. State*, 179 S.W.3d 18, 26–27 (Tex. App.—San Antonio 2005, no pet.) (holding that evidence was sufficient to support DWI conviction despite appellant's defense of disability); *Landers v. State*, 110

---

[12] *See Preston v. State*, No. 11-98-00010-CR, 1999 WL 33747862, at *1 (Tex. App.—Eastland 1999, no pet.) (holding that DPS chemical analyst's testimony was sufficient to prove substance was dangerous drug).

S.W.3d 617, 620–21 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding evidence sufficient to support appellant's felony DWI conviction where appellant admitted ingesting prescription medication and appeared sluggish, stumbled, had poor coordination, and slurred her words); *Fogle v. State*, 988 S.W.2d 891, 894 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding evidence was sufficient to support jury's finding that appellant was intoxicated rather than merely suffering from brain disorder).

Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to prove beyond a reasonable doubt that Harkins was intoxicated by not having the normal use of her mental and physical faculties by reason of the introduction of the dangerous drug carisoprodol into her body. *See Clayton*, 235 S.W.3d at 778; *Watson*, 204 S.W.3d at 414–15, 417. We overrule the remainder of Harkins's first and second points.

## IV. Conclusion

Having overruled all of Harkins's points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

25

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

CAYCE, C.J. filed a concurring opinion.

PUBLISH

DELIVERED: August 29, 2008



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-412-CR

PATRICIA LOUISE HARKINS                                          APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

I concur in the majority opinion and write only to note my disagreement with the majority's holding that the trial court committed error by instructing the jury with language that tracks section 49.10 of the Texas Penal Code. The Texas Court of Criminal Appeals has held that language in a jury charge that follows the law as it is set out by the Texas Legislature shall not be deemed

error on the part of the trial court.[1]  Because we are bound by the decisions of the court of criminal appeals,[2] I would hold that the trial court did not err by submitting an instruction on section 49.10 that tracks the language of the statute.  I agree with the majority in all other respects.


JOHN CAYCE
CHIEF JUSTICE

DELIVERED:  August 29, 2008

---

[1]*E.g.*, *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that "[f]ollowing the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge"); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) (holding that "[a] jury charge which tracks the language of a particular statute is a proper charge on the statutory issue"), *cert. denied*, 514 U.S. 1068 (1995); *Duffy v. State*, 567 S.W.2d 197, 204 (Tex. Crim. App.) (finding no error where charge tracked the language of the statute, despite appellant's argument that the word "whether" made the charge ambiguous and the word "that" should have been substituted), *cert. denied*, 439 U.S. 991 (1978).

[2]*Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd).

2