COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                       NO.  2-08-330-CR

                                                    

 

ALLAN SHANE WESTFALL                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL COURT
NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                      MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction








Appellant Allan Shane Westfall was charged with
the offense of failure to identify as a fugitive.[2]  He was convicted after a jury trial and
sentenced to one year of jail confinement and a fine of $4,000.  In three points, Appellant challenges the
legal and factual sufficiency of the evidence to support his conviction and
complains that the trial court abused its discretion by excluding evidence
crucial to his defense.  We reverse the
conviction and judgment of the trial court and remand this cause for a new
trial.  

II.     Factual and Procedural Background

On November 13, 2006, at 8 p.m., Officer Todd
Schuler stopped Appellant=s
vehicle because of a defective license plate light.  See Tex. Transp. Code Ann. ' 502.409(a)(6) (Vernon Supp. 2009).  Officer Schuler testified at trial that when
he approached Appellant=s
vehicle, he noticed Appellant Awas extremely nervous@ and stated he had left his driver=s license at home.  Officer Schuler stated that Appellant told
him that his name was AAl
Westfall.@
  Testifying from his report because he
did not remember what date of birth Appellant gave him, Officer Schuler said
Appellant gave a social security number with the last four digits of 9363, gave
a date of birth of 6/28/74, and stated that he was thirty years old.  Officer Schuler returned to his vehicle to
ask Denton County police dispatch to verify Appellant=s identity and driver=s license status.    








Officer Schuler testified that dispatch told him
Appellant=s
date of birth was actually 6/28/75, the social security number was incorrect,
and Appellant had three outstanding warrants from Dallas County.  The officer then returned to Appellant=s vehicle and again asked for Appellant=s name, social security number, and date of birth.  Officer Schuler testified Appellant gave the
same information, at which point he asked Appellant to step out of his vehicle,
conducted a pat-down search of Appellant, and handcuffed him.  Officer Schuler testified that after being
handcuffed, Appellant admitted he had given the wrong information and provided
Officer Schuler his correct social security number and correct year of birthC1975. 
Officer Schuler placed Appellant under arrest and placed him in the back
of the police car.  Officer Schuler
further testified that he conducted a search of Appellant=s vehicle and found his driver=s license in a Acut-out@ of the dashboard of his vehicle, which would
have been within Appellant=s reach when he was in the car.  Officer Schuler testified that, based on his
training and experience, he believed Appellant intentionally gave him a false
date of birth.   








Appellant=s defensive theory, explained by his counsel in
opening statement and in colloquies with the trial court, was that Appellant
told Officer Schuler the incorrect year of birth in an attempt to explain that
the information in the Denton County system differed from the correct date of
birth on his driver=s
license.  Officer Schuler stated he did
not recall Appellant=s
explaining that Denton County had the wrong date of birth and social security
number in its system.  If Appellant had
provided that explanation, Officer Schuler testified he probably would have put
that in the police report, but he was not sure he would have done so.  On cross-examination, Officer Schuler
confirmed that, to his knowledge, his video camera was turned on that evening
and the events were recorded; however, he did not have the tape and did not
know what had happened to the tape.  

During Appellant=s case, he offered a file from a previous charge
of failure to identify from Denton County in which his birth date was shown as
1974, rather than 1975, and the social security number was wrong, but the trial
court concluded that he had failed to show relevance and excluded that
evidence. 








Appellant called one witness in his defense, Dana
Cassidy, who testified that she was a friend of Appellant=s and had known him since high school.  She testified that Appellant kept a piece of
paper in his wallet with his license that explained his actual birthday due to
an ongoing problem trying to prove his date of birth that summer because Athe system [] had his birthday wrong.@  Cassidy
stated that Appellant had the same problem when he was arrested in June
2005.  Cassidy testified that Appellant
called her on her cell phone at 8:01 p.m. on the date of this incident and told
her that he was being pulled over at that moment, and she heard Appellant
talking with the officer at that time.  

At that point, the State took Cassidy on voir
dire.  She explained that she heard the
officer ask Appellant for his license and registration because he placed the Aopen@ phone on the seat.  The trial court instructed the jury to leave
the courtroom for further voir dire examination of the witness, in which
Cassidy stated she heard Appellant explain to the officer the problem with the
date of birth, that the dates on his driver=s license and in the system were different, and
that the date of birth was wrong in the system. 
The trial court sustained the State=s hearsay objection to this testimony.  

III.     Legal Sufficiency of the Evidence

In his first point, Appellant contends that the
evidence was legally insufficient to support the verdict because he was not
lawfully detained by the officer at the time he allegedly gave the false
information.   

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict.@  Hooper
v. State, 214 S.W.3d 9, 16B17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








During a routine traffic stop, an officer may
demand identification, a valid driver=s license, and proof of insurance from the
driver, and the officer may detain the driver in order to check for outstanding
warrants.  See Walter v. State, 28
S.W.3d 538, 542 (Tex. Crim. App. 2000); Anderton v. State, No.
03-08-00262-CR, 2009 WL 349144, at *2 (Tex. App.CAustin Feb. 13, 2009, no pet.) (mem. op., not
designated for publication).  Texas Penal
Code section 38.02(b) addresses the offense of failure to identify and states
that, 

(b)    A person commits an
offense if he intentionally gives a false or fictitious name, residence
address, or date of birth to a peace officer who has:

 

(1)    lawfully arrested the
person;

 

(2)    lawfully detained the
person; or

 

(3)    requested the information
from a person that the peace officer has good cause to believe is a witness to
a criminal offense.

. . . .

 

(d)    If it is shown on the
trial of an offense under this section that the defendant was a fugitive from
justice at the time of the offense, the offense is: 

 

. . . 

 

(2)    a Class A misdemeanor if
the offense is committed under Subsection (b).

 

Tex.
Penal Code Ann. ' 38.02(b),
(d)(2).[3]








An officer may initiate a traffic stop if he
reasonably suspects that the driver has committed a traffic violation.  Whren v. U.S., 517 U.S. 806, 810, 116
S. Ct. 1769, 1772B73
(1996); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A traffic stop Asignificantly curtails the freedom of movement
for the driver and passenger,@ making it a Fourth Amendment seizure equivalent
to a temporary detention.[4]  See Berkemer v. McCarty, 468 U.S. 420,
439, 104 S. Ct. 3138, 3150 (1984); Davis v. State, 947 S.W.2d 240, 242B45 (Tex. Crim. App. 1997); St. George v. State,
197 S.W.3d 806, 815 (Tex. App.CFort Worth 2006) (op. on reh=g), aff=d,
237 S.W.3d 720 (Tex. Crim. App. 2007); see also Johnson v. State, 912
S.W.2d 227, 234B35
(Tex. Crim. App. 1995) (holding that an investigative detention occurs when a
police officer restrains a person=s freedom of movement, either by physical force
or by show of authority).  The
U.S. Supreme Court held in Brendlin v. California that, for a
police-ordered traffic stop, a seizure occurs the moment a driver=s car comes to a halt on the side of the
road.  551 U.S. 249, 257, 127 S. Ct.
2400, 2410 (2007). 








The jury heard uncontradicted evidence that the
officer initiated a valid traffic stop for a license plate violation and that
Appellant gave him a false date of birth and social security number twice
during the detention.  The jury heard the
time line for the stop in which Appellant gave Officer Schuler a disparate
birth date and age before the officer went to his patrol car to investigate his
driver=s license status and any potential warrants.  The jury further heard Officer Schuler=s testimony that, after he obtained information
from dispatch as to Appellant=s correct date of birth and that the social
security number he gave was wrong, Appellant repeated the false information,
causing Officer Schuler to request that Appellant step out of his car to be
patted down and handcuffed.  

Appellant argues that he was not Aphysically forced to yield to the officer@ and cites Quick v. State to support his
legal sufficiency challenge.  999 S.W.2d
79, 81 (Tex. App.CHouston
[14th Dist.] 1999, no pet.) (holding appellant not lawfully detained or
arrested when he gave false information). 
However, Quick involved a police confrontation when a police
officer knocked on the defendant=s door, and the defendant, who opened the door
(but stood behind burglar bars across the doorway), at first gave a false name
but then acknowledged who he was, saying, AIt=s me, it=s me,@ and surrendered to the officer when told that
the officer had an arrest warrant.  Id.
at 80.  The court of appeals held that
the evidence was legally insufficient to support a failure to identify
conviction because the appellant had not been arrested and had not yielded to
the officer=s
show of authority at the time he gave a false name and, therefore, was not
detained as required by the statute.  Id.
at 80B81.  








In this case, Officer Schuler lawfully detained
Appellant the moment he pulled his vehicle over for a legitimate traffic law
violation.  See Brendlin, 551 U.S.
at 262, 127 S. Ct. at 2410; Berkemer, 468 U.S. at 439, 104 S. Ct. at
3150; Davis v. State, 947 S.W.2d 240, 242B45 (Tex. Crim. App. 1997); see also Waalee v.
State, No. 09-07-00245-CR, 2008 WL 5622656, at *2 (Tex. App.CBeaumont Feb. 11, 2009, no pet.) (mem. op., not
designated for publication) (stating that it would be reasonable to infer that
by stopping his vehicle after the officer turned on his overhead lights, the
driver was aware that he was Abeing detained by a law enforcement officer@). 
Appellant yielded to Officer Schuler=s show of authority when Appellant pulled his
vehicle over for the traffic stop, and this detention continued while he
provided his incorrect identification and waited for the officer to check
it.  See Walter, 28 S.W.3d at
542.  Furthermore, Appellant=s meeting with Officer Schuler was not a
consensual encounter; it was a lawful detention for a traffic violation that
had already occurred and continued based upon reasonable suspicion.  It is unlikely that Appellant felt Afree to leave@ or Ago about his business@ during the traffic stop.  See Garcia-Cantu, 253 S.W.3d at 242; see
also Berkemer, 468 U.S. at 436B37 (stating that Afew motorists would feel free either to disobey a
directive to pull over or to leave the scene of a traffic stop without being
told they might do so@).








Viewing the evidence in a light most favorable to
the prosecution, the jury could have found beyond a reasonable doubt that
Appellant intentionally gave false information to Officer Schuler while he was
lawfully detained.  See Tex. Penal
Code Ann. ' 38.02(b);
see Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  We hold that the evidence
is legally sufficient to support the trial court=s judgment and overrule Appellant=s first point. 

IV.    Factual Sufficiency of the Evidence

Appellant argues in his second point that the
evidence was factually insufficient to support the verdict because of the
evidence of a problem with Appellant=s identification information in the Denton County
police system.  We will liberally
interpret Appellant=s
brief as challenging the factual sufficiency of the Aintent@ element of the false identification offense
because of Appellant=s
defensive theory that he gave false and correct identification
information to Officer Schuler as an attempt to remedy a mistake in the police
system.  A person Aacts intentionally, or with intent, with respect
to the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result.@  Tex. Penal
Code Ann. '
6.03(a) (Vernon 2003).  A factfinder may
infer intent from the accused=s acts and words as well as the surrounding
circumstances.  Baldwin v. State,
264 S.W.3d 237, 242 (Tex. App.CHouston [1st Dist.] 2008, pet. ref=d).  








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s determination is clearly wrong and manifestly
unjust or whether conflicting evidence so greatly outweighs the evidence
supporting the conviction that the factfinder=s determination is manifestly unjust.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417. 








We may not simply substitute our judgment for the
factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s determination of the weight to be given
contradictory testimonial evidence because resolution of the conflict Aoften turns on an evaluation of credibility and
demeanor, and those jurors were in attendance when the testimony was delivered.@  Johnson,
23 S.W.3d at 8.  Thus, unless we conclude
that it is necessary to correct manifest injustice, we must give due deference
to the factfinder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id.
at 9.

In his factual sufficiency argument, Appellant
points out that there was no contradictory testimony because the evidence about
his version of what he told the officer was excluded.  He argues that he was thus precluded from
showing his side of the case. 
Nevertheless, he argues that the evidence supporting the verdict is so
weak as to be factually insufficient. 
Viewing the State=s
evidence in a neutral light, Appellant=s actions showed that he intentionally gave a
false date of birth and false social security number.  Although most of her testimony was excluded,
the jury was able to hear Cassidy=s testimony that there was an ongoing problem
with Appellant=s
date of birth in the Denton County records and that Appellant carried a piece
of paper in his wallet because Ain the summer in the system they had his birthday
wrong.@  The jury was
free to believe or disbelieve all or part of either Cassidy=s or Officer Schuler=s testimony, and we give deference to the jury=s findings. 
See Johnson, 23 S.W.3d at 8B9.  Based
on all the evidence regarding Appellant=s acts and words, a jury reasonably could have
accepted Officer Schuler=s
testimony that Appellant intended to give false information to Officer Schuler
during the traffic stop.  See Tex.
Penal Code Ann. '
6.03(a) (Vernon Supp. 2009); Baldwin, 264 S.W.3d at 242.  








Viewing the evidence in a neutral light, we
cannot say that the evidence is so weak that the jury=s determination that Appellant intentionally gave
false information to an officer while he was lawfully detained was clearly
wrong or manifestly unjust.  We also
cannot say that any evidence favorable to Appellant  so greatly outweighs the evidence supporting
the conviction that the jury=s determination is unjust.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15,
417.  We hold that the evidence is
factually sufficient to support the verdict and overrule Appellant=s second point. 

V.     Exclusion of Evidence

Appellant argues in his third point that the
trial court improperly excluded evidence consisting of testimony from Cassidy
and the file from his prior Denton County conviction.  

A.     Exclusion
of Dana Cassidy=s
Testimony

Appellant argues that the trial court improperly
excluded Cassidy=s
testimony about what she overheard on the cell phone while Appellant was
talking with Officer Schuler during the traffic stop.  Specifically, the trial court excluded as
hearsay Cassidy=s
testimony on voir dire outside the presence of the jury, as follows:

Q.  And what did you hear?

 

A.  He gave his name, Allan Shane Westfall, and
his

date of birth.








Q.  Okay, and whatCdid he give any explanation about

the problem
with the date of birth?

 

A.  Yes.

 

Q.  And what did he say?

 

A.  He told him that his date of birth is wrong.

 

Q.  Wrong in what way?

 

. . . . 

 

A.  TheCthe date of
births are different.  They=re not the

    same on the driver=s license as they are in the system. 

    

Appellant offered Cassidy=s testimony as evidence of Appellant=s behavior at the time, and as to what Cassidy
perceived, as a Apresent
sense impression,@
as an exception to the hearsay rule pursuant to Texas Rule of Evidence 803(1). AHearsay@ is a statement, other than one made by the
declarant while testifying at trial or during a hearing, offered in evidence to
prove the truth of the matter asserted. 
Tex. R. Evid. 801(d).  One of the
listed exceptions to the hearsay rule is testimony constituting a Apresent sense impression,@ which is defined as a Astatement describing or explaining an event or
condition made while the declarant was perceiving the event or condition, or
immediately thereafter.@  Tex. R. Evid. 803(1).








        The
rationale for the present sense impression exception is that (1) the report at
the moment of the thing then seen or heard is safe from any error resulting
from defect of memory of the declarant, and (2) there is little or no time for
a calculated misstatement.  Fischer v.
State, 252 S.W.3d 375, 380 (Tex. Crim. App. 2008).  Narratives, opinions, or calculated
statements are not admissible as present sense impressions.  See id. at 381. 

Appellant claims that Cassidy=s perception of the conversation between
Appellant and Officer Schuler, as heard through Appellant=s cell phone, qualified as a present sense
impression.  It is unclear whether
Appellant is contending that Cassidy or Appellant is the Adeclarant.@  Cassidy
did testify that she heard Appellant speaking with Officer Schuler during the
traffic stop and that Appellant=s statements were contemporaneous to the
event.  See Russo v. State,
228 S.W.3d 779, 808B09
(Tex. App.CAustin
2007, pet. ref=d).  However, Cassidy merely overheard Appellant
answering questions from the officer while his cell phone was open on the front
seat; he was not describing the event that was happening at that time.  His utterances were, at best, a defense of
his predicament regarding his birth date to the officer during a routine
traffic stop.  See Fischer, 252
S.W.3d at 381 (stating that 803(1) is Apredicated on the notion that the utterance is a
reflex product of immediate sensual impressions, unaided by retrospective
mental processes@).









The statements Cassidy overheard Appellant make
to the officer were not explanatory or descriptive of the event transpiring at
that time to qualify as a present sense impression under rule 803(1).  See Fischer v. State, 207
S.W.3d 846, 859 (Tex. App.CHouston [14th Dist.] 2006), aff=d,
252 S.W.3d 375 (Tex. Crim. App. 2008) (holding that rule 803(1) was not
applicable when the officer did not merely explain or describe events but participated
in and created the events in his recorded observations).

If Appellant is arguing that Cassidy is the Adeclarant,@ we disagree that her testimony as to what she
heard constitutes a Apresent
sense impression.@  First, Cassidy=s only statement was her testimony at the
trial.  A statement, to qualify for the
exception of Apresent
sense impression,@
must be Aother than one made by the declarant while
testifying at a trial or hearing.@  Tex. R.
Evid. 801(d).  Second, her excluded
testimony constituted her own reflective narrative of the conversation she
personally overheard between Appellant and Officer Schuler.  See Fischer, 252 S.W.3d at 381.  Third, her testimony at trial was not made
contemporaneously with the event she was describing but long afterward; thus,
it was not a Apresent
sense impression.@  See Rabbani v. State, 847 S.W.2d 555,
560 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993). 








Nevertheless, Cassidy=s testimony was not hearsay because it was not
offered for the truth of the matter asserted. 
Tex. R. Evid. 801(d) (defining Ahearsay@ as an out-of-court statement offered as evidence
to prove the truth of the matter asserted). 
AAn extrajudicial statement which is offered for
the purpose of showing what was said rather than for the truth of
the matter stated therein does not constitute hearsay.@  Dinkins
v. State, 894 S.W.2d 330, 347
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995) (holding patient
application form admissible to show how defendant became a suspect); Davis
v. State, 169 S.W.3d 673, 675B76 (Tex. App.CFort Worth 2005, no pet.) (holding police
testimony regarding anonymous tips that focused investigation on defendant as a
suspect was admissible nonhearsay).  








Appellant did not offer Cassidy=s testimony describing his statements to the
officer to show the truth of Appellant=s correct birth date.  That fact was undisputed.  Her testimony was offered to show what she
heard Appellant say to the officerCthat he gave both his right and wrong birth date
in an attempt to explain that a wrong birthday was listed in the system.  Because Appellant was charged with giving
false identification, what he said was demonstrative evidence, and her
testimony offered to show what he said was not inadmissible as hearsay. See
Tamayo v. State, 924 S.W.2d 213, 215 (Tex. App.CBeaumont 1996, no pet.) (holding typewritten
statement by defendant alleged by State to be false as basis for perjury charge
admissible as evidence of what defendant stated and as demonstrative evidence);
see also Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999)
(listing of person in address books of two alleged co-conspirators admissible
as evidence of link between them); Rezaie v. State, 259 S.W.3d 811, 814
(Tex. App.CHouston
[1st Dist.] 2007, no pet.) (holding printout of credit application admissible
to show application was made, not offered to show that information in
application was true).  

Cassidy=s testimony was relevant to contradict Officer
Schuler=s version of the encounter in which Officer
Schuler testified that Appellant gave the wrong birth date twice and that he
did not recall any explanation of a mistake in the Denton County system.  And Cassidy=s testimony was relevant to Appellant=s intent: 
to show why he provided the wrong birth date.  The testimony was not inadmissible as
hearsay, and the trial court abused its discretion by excluding it.[5]    

 

 








B.     Harm
Analysis

Appellant contends he was effectively precluded
from presenting his defense.  Exclusion
of a defendant=s
evidence will be constitutional error only if the evidence forms such a vital
part of the case that exclusion effectively precludes the defendant from
presenting a defense.  Potier v. State,
68 S.W.3d 657, 665 (Tex. Crim. App. 2002); see Tex. R. App. P.
44.2(a).  While the testimony describing
Appellant=s
statements to Officer Schuler was relevant to the defensive theory that
Appellant was trying to correct a mistake in the system, its exclusion did not Asignificantly undermine fundamental elements of
the accused=s
defense.@  Potier,
68 S.W.3d at 665 (citing United States v. Scheffer, 523 U.S. 303,
315, 118 S. Ct. 1261, 1268 (1998)). 
Appellant was able to argue his theory in opening statement, supported
by testimony from Cassidy in the jury=s presence, regarding a mistake in the
system.  Where a defendant is not
prevented from presenting the substance of his defense to the jury, his
inability to present his case in the form and to the extent he desired does not
constitute a denial of due process or other constitutional right.  See id.








Instead, the rule that applies to this error in
excluding evidence is Texas Rule of Evidence 103(a).  Tex. R. Evid. 103(a) (AError may not be predicated on a ruling which
admits or excludes evidence unless a substantial right of the party is affected
. . . .@).  A
nonconstitutional error that does not affect substantial rights must be
disregarded.  Tex. R. App. P.
44.2(b).  The erroneous admission of
evidence does not affect substantial rights if, after examining the record as a
whole, we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In assessing the likelihood that the error
adversely affected the jury=s verdict, the appellate court should consider
everything in the record, including the evidence admitted, the nature of the
evidence supporting the verdict, the character of the alleged error, and how it
might be considered with other evidence in the case.  Morales v. State, 32 S.W.3d 862, 867
(Tex. Crim. App. 2000).  We may also
consider the jury instructions, the State=s theory, and any defensive theories, closing
arguments, and even voir dire, if applicable.  Id. 









In this case, the evidence admitted directly
bearing on the issue of failure to identify consisted solely of Officer Schuler=s testimony. 
The State=s
theory was that Appellant gave a false identity in fear of Officer Schuler
discovering that he had outstanding warrants. 
Appellant=s
opposing theory was that he gave the fictitious information in conjunction with
his correct birth date to explain a discrepancy in the Denton County records.  As the State points out, Cassidy was able to
testify to some information relevant to Appellant=s defensive theory, including an ongoing problem
of trying to prove his date of birth, that he carried a piece of paper in his
wallet because the Asystem@ had his birthday wrong, that he telephoned
Cassidy at the time he was stopped, and that he had previously been arrested on
June 1, 2005, in Denton County for failure to identify.  The State also points out that Appellant=s counsel argued his theory in opening statement
when Appellant=s
counsel stated:

Well, I agree
with a lot of what [the prosecutor] said except

one little
thing that she hasn=t mentioned, is that I=m going to

show later on, the evidence will show that in the
Denton County system his birthday got put in incorrect.  They have itCat a certain point they put it in as
6/28/74.  And so he=s been battling a mistake that the Denton County
System has made.        

. . . .

And so when
you go to hear the evidence, you might want to take into account the alleged
mistake the State has made here.  Thank
you very much.  

 








But despite the foregoing, Cassidy=s specific testimony that was excludedCthat Appellant told Officer Schuler of the
mistake and his correct birth dateCwent to the heart of Appellant=s sole defensive theory.  The offense with which Appellant was charged
was based on what he said to Officer Schuler. 
The State=s
theory hinged on Officer Schuler=s testimony as to what Appellant said to him, and
Cassidy=s version of what Appellant said directly
contradicted that of Officer Schuler. 
Moreover, because the testimony was excluded, the State was able to urge
the jury in closing argument, ADon=t go back there and go, well, the girlfriend came
in and it looks like she has a story to tell, [] it doesn=t go with this case, and you=re not to consider it.@   








Appellant=s counsel, in response, was able to argue only
that the evidence simply was not at the level of proof beyond a reasonable
doubt because Ait
all comes down to one officer@ and Awhat do you believe about his testimony at this
point?@  Because
of the exclusion of what Cassidy heard Appellant say, Appellant was unable to
present or argue his contradictory version of what he told the officer, the
critical event on which the State=s entire case rested.  Appellant was deprived of the right to
present the key portion of his defensive theory.  We conclude that the trial court=s exclusion of Cassidy=s testimony could have adversely influenced the
jury and had more than a slight effect on the verdict.  We hold that the wrongful exclusion of the
evidence affected Appellant=s substantial rights.  See, e.g., Melgar v. State, 236 S.W.3d
302, 309 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d) (holding, where evidence presented opposing
versions of events, improper exclusion of character witness evidence that
defendant was considered honest affected defendant=s substantial rights); Cruz v. State, 122
S.W.3d 309, 315 (Tex. App.CHouston [1st Dist.] 2003, no pet.) (holding
wrongful exclusion of identification testimony providing defendant with alibi
deprived appellant of defensive evidence and affected his substantial rights); Miller
v. State, 42 S.W.3d 343, 346 (Tex. App.CAustin 2001, no pet.) (holding exclusion of
testimony that individual repeatedly assaulted and beat appellant lent
credibility to her duress defense).  We
sustain this portion of Appellant=s third point.

C.     Exclusion
of File Contents

Appellant also asserts that the trial court
improperly sustained the State=s objection to Appellant=s evidence Afrom a prior felony conviction show[ing]
incorrect information about [] [A]ppellant.@  The
objected-to evidence consisted of a clerk=s file containing Appellant=s unrelated 2005 case that showed his name and
social security number incorrectly placed in the Denton County computer
system.  Officer Schuler was unable to testify
about this case file or any clerical mistake because he retrieved Appellant=s date of birth and social security information
based on warrants out of Dallas County, not Denton County.  The trial court sustained the State=s objection based on relevance.   








Appellant does not further develop an argument
that the evidence regarding the Denton County clerk=s mistake in the 2005 case was relevant to his
identification on Dallas warrants. 
Appellant does not explain nor provide citation to authority to support
how the file in question would have supported his theory.  This argument is inadequately briefed, and we
decline to address it.  See Tex.
R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App.
2000), cert. denied, 532 U.S. 1053 (2001); see also Harkins v.
State, 268 S.W.3d 740, 752 (Tex. App.CFort Worth 2008, pet. ref=d).  We
overrule the remainder of Appellant=s third point.

VI.    Conclusion

Having sustained part of Appellant=s third point that the testimony of Cassidy was
erroneously excluded as hearsay, we reverse the conviction and judgment of the
trial court and remand this cause for a new trial.  

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL: 
DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
January 7, 2010











[1]See Tex. R. App. P. 47.4.





[2]The information charged Appellant with intentionally giving a false or
fictitious name, address, or date of birth to a peace officer while lawfully
arrested or detained and while a fugitive from justice with a valid arrest
warrant outstanding.  See Tex.
Penal Code Ann. ' 38.02(b) (Vernon Supp. 2009). 
An offense under this subsection is a Class A misdemeanor when the defendant
is a fugitive from justice at the time of the offense.  Id. at ' 38.02(d)(2).   





[3]See St. George v. State, 237 S.W.3d 720, 724
(Tex. Crim. App. 2007).





[4]The test distinguishing a police encounter from a police detention is
whether Ataking into account all circumstances surrounding the encounter, the
police conduct would have communicated to a reasonable person that he was not
at liberty to ignore the police presence and go about his business.@  See State v.
Garcia-Cantu, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008). 

 





[5]In considering a trial court=s ruling
admitting or excluding evidence, we determine whether the trial court abused
its discretion.  Page v. State,
213 S.W.3d 332, 337 (Tex. Crim. App. 2006). 
We will uphold a trial court=s ruling on
the admissibility of evidence as long as the trial court=s ruling was within the Azone of
reasonable disagreement.@  Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g). A trial court abuses its discretion when it so deviates from
applicable guidelines and principles that the decision falls outside the zone
of reasonable disagreement.  Gomez v.
State, 49 S.W.3d 456, 458 (Tex. App.CHouston [1st
Dist.] 2001, no pet.) (citing Salazar v. State, 38 S.W.3d 141, 153B54 (Tex. Crim. App. 2001).