02-10-044-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00044-CR

 

 


 
 
 Brandon Lee Denson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 8 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          In
two points, Appellant Brandon Lee Denson challenges the legal and factual
sufficiency of the evidence to support his conviction for driving while
intoxicated (DWI).  We affirm.




II. 
Factual and Procedural Background

          Judy
Smith testified that it was still light out around 7:35 p.m. on July 14, 2007,
as she and her sister were driving home on a residential road in Fort Worth. 
From her rear-view mirror, Smith saw a low-to-the-ground green-teal Pontiac
Firebird coming “real fast” and knew it was going to hit her vehicle, a 2004
Ford Explorer.  Smith reflected that she did not know why the driver, who she
identified as Denson, could not have “just swerved to the left and missed [her]
completely.  There [were] two lanes of traffic he could have gone in and gone
around [her]” because there was no oncoming traffic.

          Smith
heard the low-to-the-ground Pontiac Firebird’s brakes squeal.  It hit her
vehicle, backed off and hit her vehicle again, and then “went completely under
[her vehicle] and lifted [it] up and was basically driving [it].”  The Firebird
left 215 feet of skid marks and ended up in a nearby driveway or front yard.

          The
Firebird was totaled; “[t]he whole hood was off, the radiator was scrunched
up.  The air bag did not go off . . . and it was just crunched.”  Smith took
photos of the wreck right after it happened, admitted as State’s Exhibits 2, 3,
4, 5, 6, and 7.[2] 
State’s Exhibit 7 shows the skid marks left by Denson’s Firebird.

          Smith
exited her car and started to check on Denson before realizing that she needed
to call 911 first; she went back to her car to retrieve her cell phone and
dialed 911.  While she was doing that, the homeowners of the yard where Denson
landed the Firebird came out to help him.  Smith described Denson’s appearance
after the accident as glassy-eyed, and as she relayed the 911 operator’s
instructions to him, he appeared to have a hard time comprehending her
questions.  He had a head wound that was bleeding profusely.  Police and an
ambulance arrived a few minutes after the incident.

          Fort
Worth Police Officer C.M. Gilbert testified that he was dispatched to the
accident around 7:30 p.m.  He found a vehicle in a yard and another vehicle
about 100 feet away.  He described Denson as having bloodshot, watery eyes; slurred
speech; slight disorientation; and a slight odor of alcoholic beverage, and he
started to suspect that Denson might have been under the influence of
something.  He asked Denson if he had had anything to drink, and Denson said
that he had consumed one beer earlier.  Denson knew generally where he was and
could say what day it was, but “that was about it.”  Denson told him that his
accelerator had stuck.

          The
only field sobriety test that Officer Gilbert was able to perform on Denson was
the horizontal gaze nystagmus (HGN) test because Denson was “backboarded” by
MedStar to transport him to the hospital.  He observed six clues before MedStar
transported Denson to John Peter Smith hospital (JPS).  Officer Gilbert stated
that the HGN clues indicate that there is a possible presence of an alcoholic
beverage or some other intoxicant.

          Officer
Gilbert followed the ambulance to the hospital, gave Denson his statutory
warnings, and instructed the nurse to perform a DWI blood draw after Denson
consented.  The blood draw, at 9:27 p.m., occurred two minutes after Denson
consented and around two hours after the collision.

          The
State subpoenaed Denson’s emergency room medical records from JPS, and the
trial court admitted them.  The hospital record states that Denson said his gas
pedal was stuck, that he could not stop, that he rear-ended a parked car, and
that he did not remember the accident.  The toxicology report on his hospital
urine sample collected at 1:16 a.m. on July 15, 2007, indicates that his urine
was positive for benzodiazepine (Alprazolam) and cannabinoids (marihuana).

          Dr.
Angela Springfield, Tarrant County Medical Examiner’s Office’s chief
toxicologist, testified that a therapeutic quantity of Alprazolam was found in
Denson’s blood.  His blood was not tested for alcohol, and the hospital’s
cannabinoids finding was not confirmed by her lab.

          Dr.
Springfield testified that side effects of Alprazolam include sedation,
dizziness, disorientation, confusion, or muscle relaxation, depending on the
individual, and that alcohol would intensify the effect of Alprazolam.  She
stated that the presence of cannabinoids, combined with alcohol or Alprazolam,
could impair the driver because they affect reaction times and judgment about
speed and location of the lane.  She opined that a person with these substances
in his system would not have the normal use of his mental or physical
faculties.  And she indicated that there was “a very good chance” that a person
with just Alprazolam in his blood would be an impaired driver.

          Denson’s
mother, Tammy Denson, testified that she arrived at JPS around 8:15 p.m. and
saw her son handcuffed to a gurney.  Denson’s vehicle had a “flood title,”
i.e., it had been previously flooded by water and was sold to Denson with that
notification.  Denson had owned the vehicle for three or four weeks prior to
the accident.  It had been “in the shop” for electrical work for around the
same amount of time as Denson had owned it.  Denson had mentioned to her about
the accelerator’s sticking, but it was going to cost several thousand dollars
to fix, and they had not taken it to a mechanic to confirm whether there was a
problem prior to the accident.

          Denson
pleaded not guilty to the State’s charge alleging that he operated a motor
vehicle in a public place while he was intoxicated by not having the normal use
of his mental or physical faculties by reason of the introduction of alcohol, a
controlled substance (Alprazolam), a drug, a dangerous drug, or a combination
of two or more of these substances in his body.  The trial court found Denson
guilty and assessed punishment at a fine of $1,000 and 120 days’ confinement in
the Tarrant County Jail.  The trial court then suspended the sentence and
placed Denson on two years’ community supervision.  This appeal followed.

III. 
Sufficiency of the Evidence

          Although
Denson challenges both the legal and factual sufficiency of the evidence to
support his conviction, the court of criminal appeals has held that there is no
meaningful distinction between the legal sufficiency standard and the factual
sufficiency standard.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim.
App. 2010) (overruling Clewis v. State, 922 S.W.2d 126, 131–32 (Tex.
Crim. App. 1996)).  Thus, the Jackson standard, which is explained
below, is the “only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt.”  Id. 
Therefore, we overrule Denson’s second point and address only his first, legal
sufficiency, point.

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  The standard of review
is the same for direct and circumstantial evidence cases; circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor.  Clayton, 235 S.W.3d at 778; Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007).

          Before
finding Denson guilty, the trial court made the following observations:

          As far as
the admission of—and smell of alcohol, that sure is a factor in looking at
alcohol, but your test presumptively concludes that there was no alcohol in his
blood at the time of the test that was two hours later.  He could have had up
to two ounces at that time, that had been metabolized completely by the time
the test was taken.

 

          But I’m not
even going to speculate as to alcohol, and I’m not going to speculate as to
cannabinoid, but it’s conclusive proof beyond a reasonable doubt that he did
have [A]lprazolam in his system.  And it doesn’t make any difference whether it
had a half life or what the therapeutic dose was, our law in Texas doesn’t make
a difference.

 

          Therefore,
Mr. Denson, I find you guilty beyond a reasonable doubt of the introduction—of
having the introduction of alcohol—or not alcohol—[A]lprazolam into your system
and you weren’t normal.  The most conclusive proof of your abnormalness is your
not being able to shut the car down or avoid the wreck.  I think the wreck is
the best example or the worst example of abnormality.

 

          Denson
specifically complains that “by limiting the ruling to the presence of
[A]lprazolam and inability to avoid the accident,” the trial court made its decision
on incriminating circumstances that were not legally sufficient to prove that
he was intoxicated and imposed “what is almost a ‘per se’ standard of
intoxication for the presence of a controlled substance.”  And he argues that
we may not consider all of the incriminating circumstances when the trial court
expressly weighed only the presence of Alprazolam and the subsequent wreck.  He
also complains that Dr. Springfield’s testimony—that a driver with only
Alprazolam in his system would be an “impaired” driver—does not rise to the
level of the statutory definition of intoxication.

          A
person commits DWI if he operates a motor vehicle in a public place while
intoxicated.  Tex. Penal Code Ann. § 49.04 (Vernon 2003).  A person is
intoxicated when he lacks the normal use of mental or physical faculties “by
reason of the introduction of alcohol, a controlled substance, a drug, a
dangerous drug, a combination of two or more of those substances, or any other
substance into the body.”  Id. § 49.01(2)(A) (Vernon 2003).[3]  The intoxicant
itself is not an element of the offense.  Gray v. State, 152 S.W.3d 125,
132 (Tex. Crim. App. 2004).  Rather, the State must prove the element of
intoxication.  Harkins v. State, 268 S.W.3d 740, 748 (Tex. App.—Fort
Worth 2008, pet. ref’d).

          Based
on the evidence at trial, the trial court could have found that Denson was
intoxicated beyond a reasonable doubt on the evidence that it specifically
remarked upon at the hearing.  That is, the record reflects that Denson
ingested at least a therapeutic level of Alprazolam, which the trial court
could have reasonably found caused him to suffer impairment of his normal use
of his physical or mental faculties based on Dr. Springfield’s testimony about
its common side effects:  sedation, dizziness, disorientation, confusion, or
muscle relaxation.  Officer Gilbert’s testimony about Denson’s slurred speech
and slight disorientation—notwithstanding the six clues from the HGN test,
which could have resulted from concussion, and Denson’s statement about
consuming a beer—further supports the trial court’s conclusion that Denson was
not “normal” and that he was intoxicated by the ingestion of Alprazolam.  See,
e.g., Harkins, 268 S.W.3d at 749–51 (holding the evidence legally
sufficient of intoxication when officer testified that appellant’s eyes were
heavy, her pupils constricted, she was “very disoriented,” her speech was
thick, she slurred her words, she staggered and was very unsteady, she failed
three standard field sobriety tests, and expert witness testified about the
side effects of the prescription drug found in appellant’s blood:  muscle
relaxation, mild sedation, and slowing of responses); Landers v. State,
110 S.W.3d 617, 620–21 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)
(holding evidence sufficient to support felony DWI conviction when appellant
admitted ingesting prescription medication and appeared sluggish, stumbled, had
poor coordination, and slurred her words).  The impairment of Denson’s normal
faculties then led to his twice hitting Smith’s vehicle and skidding for
215 feet—destroying his own vehicle in the process—even though there were
other, empty lanes that he could have moved into to avoid the collision.

          And
although Denson contends that “the presence of a controlled substance at a
therapeutic level, coupled with an accident that has a reasonable explanation,
is insufficient to prove intoxication,” we disagree on these facts.  Denson’s
mother testified that Denson had told her about his car’s accelerator sticking,
but she also stated that this had not been confirmed by a mechanic prior to the
wreck.  Denson told Officer Gilbert and hospital personnel that his accelerator
had stuck, but he also told hospital personnel that he had rear-ended a parked
car.  The trial court was entitled to resolve conflicts in the testimony and to
weigh the evidence; it was the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown
v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  Because we cannot reevaluate and weigh the credibility
of the evidence, we hold that, viewing the evidence in the light most favorable
to the verdict, Smith’s version of events, when coupled with Dr. Springfield’s
testimony about the effects of Alprazolam and Officer Gilbert’s testimony about
Denson’s demeanor, are legally sufficient to support the trial court’s
intoxication finding and Denson’s DWI conviction.  See also Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778. 
Therefore, we overrule Denson’s sole point.

IV. 
Conclusion

          Having
overruled Denson’s sole point, we affirm the trial court’s judgment.

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MCCOY, JJ.

 

GARDNER,
J. filed a concurring opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 24, 2011

 


 
 
 
 
 
 


 




 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00044-CR

 

 


 
 
 Brandon Lee Denson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 8 OF Tarrant COUNTY

----------

 

CONCURRING
MEMORANDUM OPINION[4]

----------

 

          I
agree with the majority but write separately to more specifically address
Appellant’s argument that we should disregard certain evidence admitted at
trial because the trial court allegedly assigned that evidence no weight when
finding Appellant guilty.  Contrary to Appellant’s argument, reviewing courts
conducting a sufficiency review consider all of the evidence in the
light most favorable to the prosecution to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979); see also Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (holding that the Jackson standard is the “only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt”).

          In
addressing Appellant’s claim, I am mindful that a reviewing court may not
re-evaluate the weight and credibility of the evidence and substitute its
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, the reviewing court defers to “‘the
responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.’”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) (quoting Jackson, 443 U.S. at 318–19, 99 S. Ct. at 2781).  The
reviewing court then determines “whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict.”  Id. at 16–17.

          Here,
Appellant maintains that, in finding him guilty of DWI, the trial court
“limited his ruling” to the presence of Alprazolam in his system and the
circumstances surrounding the accident and that, therefore, the court
“expressly disregarded” all of the other evidence.  Appellant contends,
therefore, that we cannot consider all of the evidence admitted at trial
because doing so would be tantamount to re-evaluating the weight and
credibility of the evidence and substituting our judgment for the factfinder’s.[5]  Appellant’s
argument is misplaced.

          Contrary
to Appellant’s assertion, the trial court did not state it was excluding or
wholly disregarding certain evidence in determining Appellant’s guilt. 
Instead, the trial court merely remarked that it was not going to “speculate”
as to the presence of alcohol or cannabinoid in Appellant’s system because the
evidence was “conclusive” that his system contained Alprazolam.  The trial
court further stated that “the most conclusive proof” of Appellant’s loss of
the normal use of his mental and physical faculties was his “not being able to
shut the car down or avoid the wreck.”  The trial court’s remarks indicate that
it was exercising its responsibility to assess and weigh the evidence.  The
remarks also demonstrate that the trial court considered the issue of alcohol:

          As far as
the admission of—and smell of alcohol, that sure is a factor in looking at
alcohol, but your test presumptively concludes that there was no alcohol in his
blood at the time of the test that was two hours later.  He could have had up
to two ounces at that time, that had been metabolized completely by the time
the test was taken.

 

          The
court’s statement that it was not going to speculate regarding the alcohol and
cannabinoids in Appellant’s system simply indicates that it did not feel the
need to assign an exact weight to those factors because of the great weight he
was giving to the Alprazolam in Appellant’s system and the circumstances of the
offense in finding Appellant guilty.  The trial court’s remarks indicate that
he considered all the evidence before issuing his ruling.

          We
are guided by the evidence in the record, and the trial court’s remarks in this
instance do not limit the evidence we can consider in reviewing the sufficiency
of the evidence.  Indeed, Appellant cites no authority to support his
contention that we would be improperly re-evaluating the weight and credibility
of the evidence by considering all the evidence presented to the trier of fact
in this case.  See Dewberry, 4 S.W.3d at 740 (holding that a reviewing
court must “evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible”).  Cf. Whitehead
v. State, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) (“[A]n appellate
court’s review of the record itself is generally limited to the evidence before
the trial court at the time of the trial court’s ruling.”).

          Thus,
I would hold that, viewed in the light most favorable to the verdict, a rational
factfinder could have found Appellant guilty of DWI beyond a reasonable doubt
because (1) he was driving on a residential street at a very high rate of
speed; (2) he hit Smith’s vehicle twice from behind, leaving 215 feet of
skidmarks; (3) at the time of the accident, he had a slight odor of an
alcoholic beverage and had glassy eyes, slow and slurred speech, and difficulty
comprehending what was happening; (4) he admitted to drinking a beer earlier;
(5) the HGN test performed on Appellant revealed six clues of intoxication; (6)
blood drawn at the hospital two hours after the offense revealed the presence
of Alprazolam; (7) a urinalysis at the hospital showed the presence of the same
drug as well as cannabinoids; and (8) although the toxicologist testified
merely that there was a good chance that Alprazolam, alone or in the presence
of either cannabinoids or alcohol “could” impair a driver, she further
testified that the presence of all three substances “would” impair a driver
such that he would not have the normal use of his mental or physical faculties.

 

 

ANNE GARDNER
JUSTICE

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 24, 2011









[1]See Tex. R. App. P. 47.4.





[2]Smith’s arm was hurt,
requiring surgery.  Smith was able to drive her vehicle to her nearby home for
a tow truck to retrieve it.





[3]The alternative is
“intoxication per se,” which requires “having an alcohol concentration of 0.08
or more.”  Tex. Penal Code Ann. § 49.01(2)(B).





[4]See Tex. R. App. P. 47.4.





[5]In support of his
argument, Appellant cites to well-established legal principles.  See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (holding that the
reviewing court may not re-evaluate the weight and credibility of the evidence
and substitute its judgment for that of the factfinder), cert. denied,
529 U.S. 1131 (2000); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993) (holding that in circumstantial evidence cases, “it is not necessary that
every fact point directly and independently to the defendant’s guilt; it is enough
if the conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances”), cert. denied, 511 U.S. 1046 (1994).