**Affirmed and Opinion filed July 16, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00511-CR

## CATHY  BROCKHAUS PARADOSKI, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Cause No. 10-CCR-152210**

# O P I N I O N

In this appeal appellant Cathy Paradoski challenges her conviction for driving while intoxicated (DWI).  The record contains evidence that appellant ingested two types of prescription medication.  Though appellant concedes she was operating a motor vehicle without the normal use of her faculties, she asserts she suffered a transient ischemic attack (TIA), causing her to lose control of her faculties while driving.  On appeal, we address the sufficiency of the evidence supporting her conviction as well as claimed errors in the trial court's admission of

evidence.  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

A witness called 911 after he saw appellant driving erratically.  Shortly thereafter, appellant rear-ended another vehicle.  Witnesses reported that appellant slurred her speech and was slow to respond to questions.  Appellant could not adequately explain where she was or what happened.  Appellant concedes that her mental and physical faculties were impaired.  Department of Public Safety Corporal Chad Olive took appellant to a hospital. There, appellant consented to a blood draw.  An analysis of appellant's blood showed the presence of hydrocodone, carisoprodol, and meprobamate (a metabolite of carisoprodol). Appellant was charged by information with the misdemeanor offense of driving while intoxicated.  Appellant pleaded "not guilty."  A jury convicted appellant of the offense and the trial court sentenced her to 180 days' confinement and ordered eighteen months of community supervision.

## II.    ANALYSIS

### A.    Sufficiency of the Evidence

In the first issue, appellant asserts the evidence is legally insufficient to support her conviction for driving while intoxicated.  In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence.  *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.  *Matson v. State*, 819 S.W.2d 839, 846 (Tex.

Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of driving while intoxicated if a person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. 49.04(a) (West, Westlaw through 2013 3d C.S.). As is relevant in this case, a person is "intoxicated" if she does not have the normal use of her mental and physical faculties by reason of the introduction of a controlled substance into the body. *Id.* at 49.01(2)(A) (West, Westlaw through 2013 3d C.S.). Penal Code section 49.04, entitled "Driving While Intoxicated," requires the State to prove that a defendant lost her faculties by reason of the introduction of a substance into her body, but it does not require the State to prove what substance caused the loss of the normal use of mental or physical faculties. *Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004). A conviction for the offense of driving while intoxicated may be supported solely by circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

The record contains evidence that appellant did not have the normal use of her faculties while operating a motor vehicle in a public place. Appellant asserts that the evidence is insufficient to prove the cause of the loss of faculties was by reason of the introduction of a controlled substance into her body. Appellant

3

asserts there is no evidence she introduced any substance into her body. She claims there is no evidence that any of the prescription drugs found in her blood caused her to lose control of her mental and physical faculties. Appellant presented evidence at trial that her impairment was caused by a transient ischemic attack.

The record contains the following evidence:

- Appellant left her friend's house between 11:30 p.m. and 11:45 p.m. Her friend's husband testified that appellant was "fine" when appellant left. He did not see appellant take any pills.

- Appellant was swerving in and out of lanes, driving her vehicle in an unsafe manner. A witness called 911 to report the erratic driving. Shortly thereafter, appellant crashed into another vehicle.

- Officer Raymond Hastedt responded to the accident and determined appellant was impaired.

- Corporal Olive took over the scene from Officer Hastedt. Corporal Olive determined appellant was intoxicated. He testified to his belief that appellant was intoxicated by a narcotic because he did not see any evidence appellant was intoxicated by alcohol.

- Video of appellant taken from Corporal Olive's vehicle was admitted into evidence.

- Corporal Olive testified that he was at the scene for about an hour before taking appellant to the hospital and that he usually spends an average of thirty minutes at the hospital. On the night he arrested appellant it took him between one and two hours to "do everything."

- Corporal Olive transported appellant to the hospital. Appellant's medical records contain notations that say "Lortab," and "Multiple pill bottles." Lortab is a generic hydrocodone. The clinical impression in the medical record is "substance abuse."

- Upon appellant's arrival at the hospital, appellant had a shaky gait and was slurring her speech, but she was "alert and oriented."

- The nurse who saw appellant at the hospital testified that she believed appellant was intoxicated by reason of drugs and/or alcohol and that

4

appellant's behavior was consistent with someone taking hydrocodone and carisoprodol. The nurse opined appellant's behavior was particularly consistent with the side-effects of carisoprodol.

- The nurse testified that she did not believe another medical condition was the cause of appellant's intoxication.

- The nurse stated that she had worked with patients who suffered from a stroke and they are not generally alert and oriented.

- The nurse testified that if there is any suspicion of a stroke, an immediate CAT scan is taken. She explained that usually if a patient is suffering from a stroke there is a "neurological deficit." Appellant's behavior was "[n]ot at all" consistent with her having a stroke. No CAT scan was ordered.

- The nurse testified that she comes into contact with patients experiencing TIAs. According to the nurse, while appellant was in the hospital she was oriented and able to answer questions, but still had slurred speech. The nurse opined that an individual suffering from a TIA could not answer "orienting questions." The nurse stated she had never seen a TIA patient with partial symptoms.

- Appellant consented to a blood draw at the hospital. The blood draw showed appellant's blood contained .02 milligrams of hydrocodone per liter of blood, greater than 15 milligrams per liter of blood of carisoprodol, and greater than 40 milligrams per liter of blood of meprobamate, which is a metabolite of carisoprodol.

- Hydrocone is a narcotic painkiller. The side-effects of this drug include slurred speech and slowed motor skills.

- Carisopodol is a muscle relaxant. Carisoprodol's side-effects include slurred speech, drowsiness, dizziness, and depressed motor skills.

- The State's toxicologist testified that an individual with the levels of hydrocodone and carisoprodol present in appellant's system could lose mental and physical faculties. The State's toxicologist could not discern from the lab results alone whether appellant suffered the loss of her mental and physical faculties and therefore the State's toxicologist could not render an opinion on that subject.

- Appellant presented an expert toxicologist who testified that the amount of hydrocodone and carisoprodol in appellant's blood could cause an individual to become impaired. He explained that both of

5

these drugs have "similar side effects," and when the drugs are taken together, those effects "will be additive." According to appellant's expert, when someone starts taking these drugs, "you would expect they would have some significant side-effects that would occur, meaning drowsiness, sleepiness, and perhaps the loss of mental and physical faculties during that time, but as time progresses both of those side effects parallel in their diminishing in the side effects that are producing that effect."

- Appellant's expert toxicologist testified that a person could take both drugs and have the normal use of mental and physical faculties "with chronic therapy."

- Appellant's expert toxicologist characterized the concentrations in appellant's blood as "high therapeutic, consistent with long-term care, but not consistent with an overdose." Appellant's expert testified that although these drugs "were more than the minimum amount to produce an effect, they were not in the toxic range." Appellant's expert toxicologist testified that he assumed the dosage was "okay" because the doctor continued to prescribe the medication and the doctor would not have continued to do so if the medication caused appellant to be impaired.

- Records from a pharmacy showed appellant filled the prescriptions for hydrocodone and carisoprodol inconsistently. The date of the offense was April 10, 2010. The records revealed appellant received thirty 350 mg tablets of carisoprodol on December 23, 2009, thirty 350mg tablets on December 29, 2009, twelve 350 mg tablets on January 18, 2010, twelve 350 mg tablets on January 22, 2010, twelve 350 mg tablets on March 16, 2010, twelve 350 mg tablets on March 24, 2010, and twelve 350mg tablets on September 15, 2010. With respect to hydrocodone, appellant received fifteen pills on December 23, 2009, five pills on December 28, 2009, fifteen pills on December 29, 2009. The record reveals that the dosage of hydrocodone increased in January 2010. Appellant received ten pills of the higher dosage January 18, 2010, ten pills of the higher dosage March 16, 2010, five pills of the higher dosage March 23, 2010, and five pills of the higher dosage September 16, 2010.

- After appellant's accident in April 2010, appellant did not fill a prescription for hydrocodone or carisoprodol until September 2010.

- Neither appellant's doctor nor the emergency-room doctor testified at

6

trial.

- Appellant's expert toxicologist testified that when an individual ingests hydrocodone and carisoprodol, there are four phases of drug metabolism: absorption, distribution, metabolism, and excretion. As the liver breaks down carisoprodol, it creates a second drug, meprobomate. Hydrocodone is broken down into a nonactive substance. According to the expert, the drugs reach a peak concentration and then are eliminated by the metabolism. As the liver breaks carisoprodol into carisoprodol and meprobomate, the two drugs are eliminated in parallel. The carisoprodol has a half-life of about ninety minutes, and it takes five times that amount of time to eliminate the drug. The half-life of meprobomate is ten to fifteen hours, and it takes about five times that length for the meprobomate to be eliminated. The half-life for hydrocodone is ten hours, so it takes about five times that to eliminate hydrocodone. The expert explained that the level of hydrocodone in a person's system changes slowly.

- Appellant also presented an expert neurologist who testified that appellant suffered a TIA and the TIA caused her to be impaired.

Appellant argues the evidence is insufficient to prove that she introduced a substance into her body causing her impairment. Appellant notes her friend's husband testified that appellant was fine when she got into her car and he never saw her take any pills. But, the State's toxicologist testified these medications were present in appellant's blood. Appellant also introduced records indicating that she had a prescription for the medications and filled that prescription. Thus, the jury had sufficient evidence to conclude appellant ingested the prescription medications. *See Kiffe v. State*, 361 S.W.3d 104, 108–09 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that the jury has the responsibility of resolving conflicts in the testimony).

Appellant also asserts that there is no evidence proving she lost her faculties by reason of the prescription drugs in her system. The State's toxicologist provided evidence of the levels of prescription medication in appellant's system. The State's toxicologist testified that the amounts of medication in appellant's

7

system could cause one to lose mental and physical faculties. Appellant's expert toxicologist agreed. The record thus contains evidence that appellant had an amount of prescription medications in her blood that could cause one to lose control of her mental and physical faculties. *See Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd).

Though appellant's expert opined that appellant had developed a tolerance to the drugs based on chronic therapy, his conclusion was based on a belief that appellant's doctor would not have continued prescribing the medication if it was causing appellant problems. Appellant's pharmacy records showed that she refilled her prescriptions inconsistently; she did not fill her prescriptions for a number of months after the accident. The jury reasonably could have concluded that appellant's irregularity in filling the prescriptions prevented appellant from developing the tolerance her expert toxicologist discussed.

Regardless of the jury's conclusion regarding appellant's prescription history, the jury had evidence from the State's expert toxicologist and appellant's expert toxicologist that appellant had prescription medication in her system in a quantity that could cause her to lose her mental and physical faculties. The video taken of appellant the night of the incident showed she had lost control of her mental and physical faculties. And, appellant conceded that she had. Additionally, the nurse who evaluated appellant testified that appellant was impaired by reason of drugs and/or alcohol. The record contains sufficient evidence to support the jury's finding that appellant was intoxicated by reason of the prescription medications in her body. *See Kiffe*, 361 S.W.3d at 108–09 (holding testimony that the levels of prescription in the defendant's system were high enough to cause intoxication sufficient to show the defendant was intoxicated by reason of the prescription drugs); *Harkins v. State*, 268 S.W.3d 740, 751 (Tex. App.—Fort

Worth 2008, pet. ref'd) (holding evidence sufficient to convict defendant of DWI when State presented evidence defendant had taken the drug Soma and two witnesses who testified Soma can cause impairment); *Hooker v. State*, 932 S.W.2d 712, 715 (Tex. App.—Beaumont 1996, no pet.) (holding evidence defendant consumed prescription drugs, was intoxicated, and that the drugs could cause intoxicating effects sufficient for DWI conviction).

Appellant argues that she suffered from a TIA and that the TIA (not the controlled substances in her system) caused her symptoms. But, the evidence appellant suffered from a TIA does not render the evidence that she was impaired by reason of prescription medications insufficient.

First, the jury was entitled to disbelieve appellant's witnesses and instead to credit the nurse's testimony that appellant was not suffering from a TIA. *See Crouse v. State*, 441 S.W.3d 508, 515 (Tex. App.—Dallas 2014, no pet.) (holding that although appellant presented an alternative explanation for impairment, fact-finder's role is to resolve conflicts and fact-finder was free to accept or reject evidence presented by either side); *Davy v. State*, 67 S.W.3d 382, 396 (Tex. App.—Waco 2001, no pet.) (holding that jury could disbelieve testimony that defendant's poor performance on field sobriety tests was based on lackof sleep and "bad leg" rather than medications).

Second, the jury reasonably could have concluded appellant did not suffer from a TIA. The neurologist and the nurse testified that victims of TIAs recover rapidly, in contrast to individuals intoxicated by hydrocodone and carisoprodol, who recover gradually. Appellant's expert concluded appellant suffered a TIA because he concluded she recovered rapidly. The neurologist testified that based on the video from Corporal Olive's patrol car, appellant recovered rapidly. The neurologist explained that appellant was impaired in the first video of appellant's

9

ride to the hospital, and that she began recovering as she got closer to the hospital and had recovered by the time Corporal Olive took appellant to jail. But the nurse, who saw appellant in between the taking of the two videos, concluded that appellant did not recover rapidly and had partial symptoms, inconsistent with a TIA. The jury viewed the videos and also heard testimony from the nurse. Based on this evidence, the jury could have concluded appellant did not suffer from a TIA. *See Harkins*, 268 S.W.3d at 750 (holding jury was entitled to disbelieve evidence that appellant's impairment was caused by preexisting physical impairment or sleep apnea and instead find that a drug, Soma, caused the impairment).

Third, even if the jury believed appellant suffered from a TIA, the jury reasonably could have concluded that appellant was impaired both by a TIA and the levels of prescription medication in her system. Appellant did not present any evidence that the presence of a TIA somehow negated any side-effects from the prescription medications. In fact, appellant's expert neurologist conceded that if one were on the drugs carisoprodol and hydrocone and also had a TIA, the TIA would not eliminate the effect of those drugs. Accordingly, the evidence presented that appellant suffered a TIA did not negate the State's evidence that appellant was impaired by reason of the prescription medications in her system. *See Kiffe*, 361 S.W.3d at 108–09; *Harkins*, 268 S.W.3d at 750.

The State presented sufficient evidence to prove that appellant was impaired by reason of prescription medications. Thus, the evidence is sufficient to support the jury's verdict. *See Landers v. State*, 110 S.W.3d 617, 620 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Kiffe*, 361 S.W.3d at 108–09; *Harkins*, 268 S.W.3d at 750. Appellant's first issue is overruled.

10

## B. Law Enforcement Officer's Testimony

In appellant's second issue, appellant asserts that the trial court abused its discretion by admitting into evidence testimony from Corporal Olive that appellant's faculties were impaired by narcotics because Corporal Olive was not qualified to provide that opinion. *See Smithhart v. State*, 503 S.W.2d 283, 285 (Tex. Crim. App. 1973). Corporal Olive testified as a lay witness. Presuming for the sake of argument that his testimony that appellant was impaired by narcotics was inadmissible evidence from a lay witness, an appellate court may not reverse a conviction without determining whether the evidence is harmful.

The erroneous admission of Corporal Olive's opinion testimony would be non-constitutional error. *See* Tex. R. App. P. 44.2(b); *Delane v. State*, 369 S.W.3d 412, 423 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Non-constitutional error that does not affect the appellant's substantial rights must be disregarded. *Delane*, 369 S.W.3d at 423. A substantial right is affected when an error has a substantial and injurious effect or influence in determining the jury's verdict. *Id.* A criminal conviction should not be overturned for non-constitutional error if the appellate court, upon examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Id.*

In assessing the likelihood that the jury's decision was adversely affected by the presumed error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Id.* Corporal Olive testified that after he stopped appellant he "knew something was wrong with her." Corporal Olive stated in a conclusory fashion that appellant was intoxicated by narcotics because he did not detect the presence of alcohol. When questioned about the possibility of a medical explanation for

11

appellant's behavior, Corporal Olive discounted the possibility, recounting how, on another occasion, he had been able to discern that a diabetic driver was experiencing hypoglycemia and was not intoxicated because the diabetic had "battleship, death eyes."

Corporal Olive conceded that when he arrived at the scene of appellant's accident the cause of appellant's behavior was a "mystery." Corporal Olive admitted that he is neither a certified drug recognition expert nor a doctor; he did not have medical training, and would not know if appellant was experiencing a TIA. He also testified that he was not educated on the effects of any particular drug on an individual and did not know, and could not guess, what was in appellant's system. Corporal Olive specifically testified that he was not stating any specific drug caused appellant to be intoxicated.

Appellant cites *Delane v. State* for the proposition that the evidence was inadmissible and harmful. *See* 369 S.W.3d 412, 423–24. In *Delane*, an unqualified police officer testified that the defendant seemed intoxicated and had "something else on board" other than alcohol. *Id.* at 422. The police officer provided detailed testimony regarding the medications and their effects. *Id.* In *Delane*, unlike in this case, it appears that no other witness testified regarding the prescription medications and their effects. *See id.* at 423–24. Moreover, unlike the testimony from the police officer in *Delane*, Corporal Olive's testimony was largely conclusory. Although Corporal Olive testified that he thought appellant was intoxicated by narcotics, he acknowledged that his testimony had several limitations, including his inability to evaluate whether or not appellant was suffering from a TIA as appellant claimed at trial. While Corporal Olive provided the jury with an example of a time that he was able to determine a diabetic was impaired due to a medical condition and the diabetic's "battleship, death eyes," this

testimony did not explain how he would be able to discern whether appellant was impaired as a result of a medical problem.

Considering the record as a whole, the evidence showed that appellant had prescription medications in her blood and that those medications could cause intoxicating effects. Appellant argued that, even though the medications could cause intoxicating effects, they did not have an intoxicating effect on her and her impairment stemmed from a TIA. Corporal Olive specifically admitted that he was in no position to evaluate appellant's argument, but the jury heard from several individuals in the medical field who provided lengthy testimony about the different potential causes of appellant's impairment. In particular, the jury heard from the nurse who concluded appellant was impaired by alcohol and/or drugs and not by a medical condition. *See Riley v. State*, 988 S.W.2d 895, 899 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding erroneous admission of testimony from unqualified police officer harmless where another expert provided similar testimony); *Jones v. State*, 111 S.W.3d 600, 604–05 (Tex. App.—Dallas 2003, pet. ref'd).

Appellant notes that the State argued during its closing statement that Corporal Olive was with appellant on the night of the accident and believed she was intoxicated by reason of narcotics, but the medical experts had access to a video recording of Corporal Olive's interaction with appellant and used that video to evaluate her demeanor. Thus, there was no reason for the jury to believe Corporal Olive's testimony over the various experts. Because Corporal Olive's testimony was conclusory and he acknowledged his lack of training as a drug-recognition expert and admitted he could not determine whether appellant suffered a TIA, and because the jury heard testimony from several medical experts on this subject, we conclude that, at most, Corporal Olive's testimony had only a slight

13

effect on the jury's verdict. *See Smith v. State*, 65 S.W.3d 332, 345 (Tex. App.—Waco 2001, no pet.). Therefore, the testimony did not affect appellant's substantial rights. *See Hawes v. State*, 125 S.W.3d 535, 542 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Any error in admitting Corporal Olive's testimony is harmless. Accordingly, appellant's second issue is overruled.

### C. Testimony from the State's Toxicologist

In her third issue, appellant argues that the trial court abused its discretion in permitting the State's toxicologist to testify that prescription medications were present in appellant's system, over appellant's objection. In particular, appellant asserts that the evidence was irrelevant because the State did not present testimony allowing the jury to determine the effect of the medication on appellant's mental and physical faculties. Appellant argues that the trial court's ruling violates the Court of Criminal Appeals' holding in *Layton v. State* because the State did not present extrapolation evidence of the amount of medication in appellant's blood while she was driving and because the toxicologist could not testify about the effects of the medications found in appellant's blood. *See* 280 S.W.3d 235, 241–242 (Tex. Crim. App. 2009). In *Layton*, the Court of Criminal Appeals determined an officer's testimony that a defendant admitted taking the drugs Xanax and Valium was irrelevant because the record contained no evidence that those drugs affected the defendant's level of intoxication. *See id.* The *Layton* court held that "a lay juror is not in a position to determine whether Xanax and Valium, taken more than 12 hours before arrest, would have any effect on appellant's intoxication." *Id.*

Evidence of a controlled substance in a defendant's blood is relevant, however, when the State presents testimony from which a lay juror reasonably could determine that the drug affected the defendant's intoxication. *See Bekendam*

14

*v. State*, 441 S.W.3d 295, 302 (Tex. Crim. App. 2014). In *Bekendam*, the Court of Criminal Appeals determined that expert testimony related to the amount of drug detected in the blood, the half-life[1] of the drug, how the drug was metabolized, and the drug's effect on the central nervous system was sufficient evidence to allow a lay juror to determine that the presence of a drug affected the defendant's intoxication. *See id.*

The record contains evidence of the amount of the drugs detected in appellant's blood, the half-life of the drugs, how the drugs were metabolized, and the drugs' effect on the central nervous system, as well as testimony that appellant was intoxicated by drugs and/or alcohol. The nurse testified that appellant was intoxicated by drugs and/or alcohol and appellant's behavior was consistent with that of one under the effects of hydrocodone and carisoprodol. *See* Tex. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."). The nurse testified appellant's behavior was particularly consistent with side-effects of carisoprodol, and carisoprodol "pretty much has the same [e]ffect on everybody that [she has] seen in her practice."

The toxicologist testified about the specific levels of the medications found in appellant's system and the general effects of the medications on the central nervous system. She explained that the side-effects of carisoprodol and meprobomate include drowsiness, dizziness, lack of coordination and tiredness. According to the toxicologist, side-effects of hydrocodone include drowsiness and dizziness. The toxicologist also testified that an individual could experience a loss

---

[1] The half-life of a drug is the time it takes for the amount of the drug in the body to be reduced by fifty percent. *See* Steven E. Pegalis, *American Law of Medical Malpractice* § 17.3 (3d 2005).

of mental and physical faculties if one had the same levels of medication in one's system as were present in appellant's system. The State's toxicologist also testified that the general half-life for carisoprodol is 100 minutes and the half-life for meprobomate is anywhere from six hours to seventeen hours. The toxicologist explained that the effects of the medications on individuals varied and that every individual has a different metabolism. As recited above, appellant's expert gave detailed testimony regarding the half-lives of the carisoprodol, meprobomate, and hydrocodone and provided detailed analysis of how those drugs were metabolized. Appellant's expert also conceded that an individual could be impaired by the amount of medication present in appellant's system.

The jury had expert testimony related to the amount of the drug detected in the blood, the half-life of the drug, how the drug was metabolized, and the drug's effect on the central nervous system. *See Bekendam*, 441 S.W.3d at 302. Accordingly, the jury had sufficient evidence to conclude that the medications affected appellant's level of intoxication, and the evidence was relevant. *See id.* The trial court did not err in admitting the State's toxicologist's testimony into evidence. *See id.* Appellant's third issue is overruled.

### III.  CONCLUSION

The evidence is sufficient to support appellant's DWI conviction.  If the trial court erred in admitting Corporal Olive's testimony that appellant was impaired by reason of narcotics, that error was harmless.  The trial court did not abuse its discretion by admitting the State's toxicologist's testimony into evidence because the evidence was relevant.

The judgment of the trial court is affirmed.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.

Publish — TEX. R. APP. P. 47.2(b).