# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00678-CR

---

**Matthew Clay Bode, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NO. CR2018-208, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Matthew Clay Bode of the offense of driving while intoxicated with two prior DWI convictions. *See* Tex. Penal Code §§ 49.04, .09. The district court sentenced Bode to four years' imprisonment but suspended imposition of the sentence and placed Bode on community supervision for seven years. In two issues on appeal, Bode asserts that the evidence is insufficient to support his conviction and complains of error in the jury charge. We will affirm the judgment of conviction.

### BACKGROUND

At trial, the jury heard evidence that on October 23, 2016, several officers with the New Braunfels Police Department responded to a 911 call reporting a man who was passed out inside a white pickup truck in a Taco Cabana parking lot. Officer Tye Jackson testified that when he arrived, the truck was blocking one of the driveways into the parking lot, the truck was

locked, and the driver inside the truck, later identified as Bode, "did not appear to be awake." Jackson was unable to wake Bode from outside the truck, and medics had to break the front passenger window to get inside the truck and wake him. When Bode awoke, he tried to put the vehicle into gear but Jackson "reached into the vehicle and removed the keys from the ignition." Later, when Jackson was conducting an inventory of the truck, he found an empty bottle of ciprofloxacin inside the vehicle.[1]

EMS Captain Michael Hays of the New Braunfels Fire Department, who reviewed the report of the incident, testified that Bode told the medics that "he had recently taken lorazepam, which is a benzodiazepine, approximately one hour earlier." The medics told Bode that he should not drive "anymore while the medications are in his system," and Bode "agreed and contacted his wife to pick him up."

Officer Matthew Burdick testified that when he arrived on the scene, Bode had already been treated by EMS and had declined transport to a hospital for any medical needs. Medics told Burdick that Bode "had taken some prescription medicine." Burdick questioned Bode about the "medications that were brought to [his] attention," and Bode admitted that he was on high blood pressure medicine and alprazolam, which Burdick testified was a depressant. Bode stated that the blood pressure medicine made him "dizzy and drowsy." Burdick asked Bode if he thought it was a good idea for him to drive while he felt like that, and Bode replied, "[P]robably not." Burdick had Bode walk to a different location in the parking lot, and he noticed that Bode was "unsteady" as he walked, "leaning to one side and failing to maintain his own balance."

---

[1] Bode testified that ciprofloxacin is an antibiotic medication that was prescribed to his wife. No evidence in the record shows that Bode consumed this medication.

2

Burdick decided to conduct field sobriety tests on Bode to determine if he was intoxicated. On the three standardized tests, Burdick testified that Bode exhibited four out of six "clues" of intoxication on the horizontal gaze nystagmus (HGN) test ("lack of smooth pursuit" in each eye and "distinct and sustained nystagmus at maximum deviation" in each eye), exhibited one clue on the walk-and-turn test (being unable to maintain his position during the instruction phase of the test) but refused to complete that test because he claimed he had an ankle injury that would make it appear as if he was intoxicated, and exhibited four out of four clues on the one-leg-stand test (putting his foot down, using his arms for balance, swaying while his foot was off the ground, and hopping). Burdick then conducted three non-standardized tests: the alphabet test, the modified Romberg test (used to measure balance), and the finger-counting test. Burdick testified that Bode completed these other tests "fairly correctly," although Bode had difficulty counting his fingers, "miss[ing] his ring finger and middle finger three times on his right hand when he was counting," and exhibited "some facial twitches," eye twitches, and shaky hands during the Romberg test. Based on the totality of the circumstances that Burdick and others had observed, which included Bode falling asleep while driving and being unable to awaken until medics were forced to break his window, the statements that Bode had made to the medics and officers regarding the drugs he had taken, and Bode's performance on the field sobriety tests, Burdick decided to arrest Bode for driving while intoxicated, believing that Bode was under the influence of prescription medication and had lost the normal use of his mental and physical faculties. A video recording of the investigation, taken from Burdick's patrol-car dash camera, was admitted into evidence and played for the jury. On the recording, Bode can be heard telling Burdick that he had "no idea" how the blood-pressure medication would affect him and expressed surprise that he had fallen asleep while driving.

3

Following Bode's arrest, Burdick asked for consent to obtain a specimen of Bode's blood, which Bode refused. Burdick then obtained a search warrant for Bode's blood and transported Bode to a hospital, where his blood was drawn. Bode's blood was tested by Sarah Martin, a forensic toxicologist for DPS. Martin testified that Bode's blood contained alprazolam at a concentration of .059 milligrams per liter," which was within the "therapeutic range," i.e., the prescription range of the drug. She explained that alprazolam, a controlled substance, is classified as a central nervous system depressant, "commonly prescribed as Xanax to help with general anxiety or for panic attacks." Martin testified that the prescription paperwork warns that "it can cause side effects like drowsiness and dizziness and that you should be cautious when driving for those reasons." When asked to explain the side effects in more detail, Martin testified,

> So again, drowsiness, dizziness, slurred speech, blurred vision. Regarding driving, you might have a hard time staying inside your lane or be weaving in traffic. You also may have a delayed reaction rate. So that means that your brain is slowed down by the drug. Therefore, your brain is slower at sending signals to your hands and your feet telling you when to brake or when to swerve. Your whole body is slowed down.

She added that unsteady balance, swaying, and facial twitching are other possible side effects of the drug, that these side effects can occur even if the user is taking a dosage of the drug within the prescribed range, and that a user would start to feel the effects of the drug "generally 30 minutes to an hour" after taking it.

Martin testified that unlike with alcohol, there was no per se level of intoxication with drugs and that drugs "aren't metabolized or eliminated in the body at a steady rate and so we're not able to calculate back in time the last time it was ingested or how much was ingested."

4

She also testified that a drug's side effects can vary, depending in part "on the amount of time your body has had to get used to the type of effects" the drug causes. She added, "Everyone is so different. Your history is different. If you take one drug versus five drugs, all of that is going to further complicate how you are affected by the drug. And for that reason, there's no established per se level [of intoxication] for drugs." When asked what information she would need to determine whether a person with .059 milligrams per liter of alprazolam in their system was intoxicated, Martin testified, "So this drug can produce certain side effects. If those certain side effects were noted and are correlated with driving negatively like y'all were able to see, that can kind of help decide one way or the other."

Martin further testified that Bode's blood did not contain lorazepam, another central nervous system depressant, and that the laboratory did not test Bode's blood for the presence of ciprofloxacin or blood pressure medicine. Martin explained that she had not heard of ciprofloxacin, which led her to believe that her laboratory never tested for the presence of that drug, and that blood pressure medicine is "generally not impairing," although she added that "[i]f it's taken in combination with other drugs, that's kind of where it may start to show impairing."

Bode testified in his defense. Bode acknowledged that he had been prescribed alprazolam and had been taking that drug "as needed" since 2015. Bode also testified that he did not sleep well in 2016 and sought treatment for what he believed to be a sleep disorder. Doctors diagnosed him with sleep apnea and prescribed him blood pressure medicine, which Bode began taking approximately one month before the incident. Bode acknowledged taking both alprazolam and blood pressure medicine on the day of the incident but denied that he fell asleep because he was intoxicated. He opined, "I felt like I had all capabilities of doing everything. I just had a feeling that that blood pressure medication, along with the sleep apnea, probably

5

dropped my blood pressure so low that I—I just kind of zonked out." Bode acknowledged telling Officer Burdick that he did not know how the blood pressure medicine would affect him but denied telling Burdick that he did not know how taking the drugs together would affect him. He testified, "I had taken them for a couple of weeks prior to that and nothing like this had happened." Bode also claimed that his dizziness was the result of his sleep apnea rather than his medication.

The jury found Bode guilty of driving while intoxicated, and the district court placed him on probation as noted above. This appeal followed.

## DISCUSSION

**Evidentiary sufficiency**

In his first issue, Bode asserts that the evidence is insufficient to support his conviction. Specifically, he contends that the evidence is insufficient to prove that he was intoxicated.

### *Standard of review*

"In assessing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

6

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "A proper review of evidentiary sufficiency considers the cumulative force of the evidence." *Garcia*, 667 S.W.3d at 761-62 (citing *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)).

"When considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id*. at 762 (citing *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). "The jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented." *Id*. (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). "If the record supports conflicting inferences, the reviewing court must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to the jury's factual determinations." *Garcia*, 667 S.W.3d at 762 (quoting *Wise*, 364 S.W.3d at 903).

"We measure the sufficiency of the evidence against the hypothetically correct jury charge." *Id*. (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)).

7

*Analysis*

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code § 49.04(a). "Intoxicated" means either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (2) having an alcohol concentration of 0.08 or more. *Id*. § 49.01(2). "The first definition is the 'impairment' theory, while the second is the 'per se' theory." *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). Only the impairment theory is applicable in this case. Intoxication under the impairment theory may be proven by either direct or circumstantial evidence, both of which are equally probative in establishing intoxication. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Evidence of intoxication includes any signs that a person's physical or mental abilities are diminished; impaired driving behavior such as driving erratically or not following the rules of the road; post-driving behavior such as stumbling, swaying, slurring or mumbling words, and an inability to perform field sobriety tests or follow directions; physical signs of intoxication such as bloodshot eyes or an odor of alcohol; any admissions by the defendant regarding the substances that he has consumed; and a refusal to submit to breath or blood testing, which can indicate a consciousness of guilt. *See Kirsch*, 306 S.W.3d at 745; *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985).

In arguing that the evidence was insufficient to prove intoxication, Bode points to evidence in the record that is contrary to the jury's finding that he was intoxicated, including that his speech was not slurred, that he responded to and understood all of Officer Burdick's

8

questions and instructions, and that he performed well on the non-standardized field sobriety tests that Burdick administered. He also puts forth alternative explanations for the evidence showing that he was intoxicated, such as his sleep apnea for falling asleep while driving and his ankle injury for his performance on the standardized field sobriety tests. He further contends that Burdick lacked credibility as a witness because he was not a "drug-recognition expert," that Martin, the toxicologist, was unable to provide "definitive" evidence that the presence of alprazolam in Bode's system caused him to be intoxicated, and that Bode's own testimony that he had the normal use of mental and physical faculties on the day of the incident "further established" that he was not intoxicated.

Bode made similar arguments to the jury, and the jury rejected them. As mentioned above, this Court is not to act as a "thirteenth juror" and reweigh the evidence presented at trial, and when the record supports conflicting inferences, as it does here, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to the jury's factual determinations. *See Garcia*, 667 S.W.3d at 762; *Crouse v. State*, 441 S.W.3d 508, 515 (Tex. App.—Dallas 2014, no pet.). Moreover, "sufficient evidence need not exclude every conceivable alternative to the defendant's guilt," *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018), and our sufficiency review does not involve "negating exculpatory theories raised by the evidence," *Ramsey v. State*, 473 S.W.3d 805, 811 (Tex. Crim. App. 2015). Instead, our review is limited to determining whether, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution, *any* rational trier of fact could have found beyond a reasonable doubt that Bode was guilty of driving while intoxicated. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016); *Johnson*, 560 S.W.3d at 226; *Ramsey*, 473 S.W.3d at 808-09, 811.

9

Here, the evidence showed that Bode was found unconscious inside his vehicle, which was blocking the driveway into a restaurant parking lot. Bystanders and police were unable to rouse Bode, who did not awaken until after medics broke the passenger window in his vehicle. From this evidence, the jury could have reasonably inferred that Bode was so impaired while driving that he was unable to finish entering the parking lot before he passed out. Bode admitted to Officer Burdick that he had taken alprazolam and blood pressure medicine before driving that day and that the latter drug makes him feel drowsy and dizzy. Martin testified that alprazolam is a central nervous system depressant that can cause one's brain and whole body to slow down, that the side effects of alprazolam include drowsiness, dizziness, unsteady balance, swaying, and facial twitching, and that these effects can occur even when one is taking the drug as prescribed, i.e., within its "therapeutic range." Martin also testified that although blood pressure medicine is "generally not impairing," it may be impairing if "taken in combination with other drugs." Although Bode testified that he believed he "zonked out" while driving because of the combination of his blood pressure medicine and his sleep apnea, the jury could have reasonably inferred that it was the combination of the alprazolam, a central nervous system depressant, and his blood pressure medicine, which Bode had only recently begun taking, that caused him to pass out while driving.

Additionally, during the DWI investigation, Officer Burdick observed several signs that Bode's physical and mental faculties were impaired, including that he was "unsteady" and "leaning to one side and failing to maintain his own balance" as he walked across the parking lot; that he exhibited four out of six clues of intoxication during the HGN test; that he was unable to "maintain his position" during the instruction phase of the walk-and-turn test, which he ultimately refused to complete; that he was putting his foot down, using his arms for

10

balance, swaying while his foot was off the ground, and hopping as he took the one-leg-stand test; that he had difficulty counting his fingers during the finger-counting test, "miss[ing] his ring finger and middle finger three times on his right hand when he was counting"; and that he exhibited "some facial twitches," eye twitches, and shaky hands during the Romberg test. Many of these signs of impairment were consistent with the side effects of alprazolam that Martin described, and the jury could have reasonably inferred from this evidence that because of the introduction of that drug into his body, Bode did not have the normal use of his mental or physical faculties while he was driving. Finally, Bode refused to provide a specimen of his blood for testing, which the jury could have reasonably inferred indicated that Bode knew he was intoxicated. Viewing the evidence in the light most favorable to the verdict, we conclude it was sufficient to prove that Bode was intoxicated. *See Paradoski v. State*, 477 S.W.3d 342, 348-49 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Crouse*, 441 S.W.3d at 514-15; *Delane v. State*, 369 S.W.3d 412, 418 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Kiffe v. State*, 361 S.W.3d 104, 108-09 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Paschall v. State*, 285 S.W.3d 166, 177–78 (Tex. App.—Fort Worth 2009, pet. ref'd).

We overrule Bode's first issue.

**Charge error**

The district court defined "intoxicated" in the jury charge as follows:

> "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.

11

In his second issue, Bode contends that it was error for the district court to include the complete definition of "intoxicated" in the charge "because there was only evidence that Appellant had one prescription medication in his system."

### Standard of review

We review claims of jury-charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). First, we must determine if there is error in the charge. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). "If there is error, then a harm analysis must be conducted." *Id*. If the defendant objected to the charge at trial, "the record need show only 'some harm' to justify reversal of the conviction." *Id*. (quoting *Almanza*, 686 S.W.2d at 171). However, if the defendant failed to object, "the error will not result in reversal of the conviction without a showing of egregious harm." *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).

Bode did not object to the charge in the court below. Thus, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id*. (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the

12

evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Reeves*, 420 S.W.3d at 816.

### *Analysis*

"Trial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) (citing *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009)). However, "the charge must also be tailored to the facts presented at trial," *Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017), and "when only a portion of the statutory definition is relevant to the elements of the offense, giving the whole statutory definition may be error," *Oulette*, 353 S.W.3d at 870.

In the context of DWI cases, "the trial court must submit to the jury only the portions of the statutory definition of 'intoxicated' that are supported by the evidence." *Burnett*, 541 S.W.3d at 84. "To do otherwise is error." *Id.* For example, in *Burnett*, the evidence showed that the defendant was intoxicated only because he drank alcohol, but the jury charge included a definition of intoxication that referenced intoxication from drugs, which was a theory not supported by the evidence. *Id.* at 78, 84-85. The court concluded that "the jury charge was erroneous because it did not apply the law to the facts produced at trial." *Id.* at 85.

In this case, contrary to Bode's contention that "there was only evidence that Appellant had one prescription medication in his system," Bode testified that he had been prescribed both blood pressure medicine and alprazolam and that he had taken both before driving on the day of the incident. Toxicologist Martin testified that alprazolam is a drug that

13

can cause impairment and that blood pressure medicine, although "generally not impairing," may be impairing if it is "taken in combination with other drugs." Martin also testified that blood pressure medicine is a drug, *see* Tex. Health & Safety Code § 481.002(16), and that alprazolam is a particular type of drug that is classified as a controlled substance under Texas law, *see id.* §§ 481.002(5), .104(a)(2). Because there was some evidence in the record that these substances caused Bode's impairment, it was not error for the charge to include references to "a controlled substance," "a drug," and "a combination of two or more of those substances" in the definition of intoxication. *See Oulette*, 353 S.W.3d at 870 (concluding that jury charge was not erroneous because although "evidence that the appellant was intoxicated by drugs was circumstantial and not obviously overwhelming, it [was] nonetheless present in the record"); *Willemsen v. State*, No. 14-17-00781-CR, 2019 WL 3956177, at *4 (Tex. App.—Houston [14th Dist.] Aug. 22, 2019, no pet.) (mem. op., not designated for publication) (following *Oulette*); *see also Gray v. State*, 152 S.W.3d 125, 133 (Tex. Crim. App. 2004) (explaining that different categories of intoxicants in definition of intoxication overlap and "are not mutually exclusive").

However, we agree with Bode that there is no evidence in the record that Bode was impaired by alcohol, a "dangerous drug," or "any other substance."[2] Accordingly, it was error for the charge to include those terms in the definition of intoxication. *See Burnett*, 541 S.W.3d at 85. Because Bode did not object at trial to the definition of intoxication in the charge, we must next determine if this definition caused him egregious harm.

---

[2] A "dangerous drug" is statutorily defined as "a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act)." *See* Tex. Health & Safety Code § 483.001(2). No evidence was presented that the blood pressure medicine or the alprazolam were classified as dangerous drugs or that Bode was intoxicated by "any other substance," i.e., a substance that was not within one of the categories of possible intoxicants expressly listed in the definition of intoxication.

First, we consider the entirety of the jury charge. The overly expansive definition of intoxication was limited to the abstract portion of the charge. The application paragraph of the charge did not repeat that definition, but it also did not tailor the definition of intoxication to the facts adduced at trial. Instead, it simply instructed the jury to find Bode guilty if the jury found that he "operated a motor vehicle in a public place while intoxicated as alleged in the indictment," which did not allege a specific intoxicating substance. Thus, the only definition of intoxication for the jury to consider was the erroneous definition provided in the abstract portion of the charge, and the remainder of the charge did nothing to ameliorate that error. This factor weighs in favor of a finding of egregious harm. *See Humphrey v. State*, No. 02-20-00017-CR, 2021 WL 3085751, *4-5 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op., not designated for publication).

Turning to the state of the evidence, this was not a case in which the parties contested the substances that were in Bode's system. The State presented evidence that before driving on the day of the incident, Bode ingested both alprazolam and blood pressure medicine, and Bode did not dispute this evidence. In fact, he admitted in his testimony that he took those medications. He also did not dispute that his blood pressure medicine was a drug and that the alprazolam was a controlled substance. The contested issue during trial was whether Bode's impairment that day was caused by the medications that he admitted taking or were instead caused by some pre-existing medical condition, such as his sleep apnea. The State did not attempt to prove that alcohol, a dangerous drug, or some other substance caused Bode's impairment. Thus, there was minimal danger that the jury would convict Bode of driving while intoxicated based on those other substances. This factor weighs against a finding of egregious harm. *See id.* at *6.

15

Regarding the arguments of counsel, the prosecutor briefly mentioned in her opening statement that Bode "told EMS that he had taken lorazepam, but then later changed it to alprazolam," which was consistent with the evidence presented during trial. She did not mention any other intoxicating substance. Defense counsel, in his opening statement, acknowledged that prior to driving on the day of the incident, Bode "took his . . . regularly prescribed dose of alprazolam . . . as well as a new blood pressure medication that he had just been prescribed—just gotten on and taken for the first time." Defense counsel then argued that those prescriptions did not cause Bode to fall asleep inside his vehicle. Thus, from the beginning of trial, counsel for both parties focused the jury's attention on Bode's prescribed medications rather than any other intoxicating substances.

This focus on the evidence adduced at trial continued during the parties' closing arguments. Defense counsel argued, "So going to Ms. Martin's testimony, all right, obviously Matt had alprazolam, not lorazepam or whatever it was, in his system. It was within the therapeutic range. . . . So the fact that Matt had alprazolam in his bloodstream is completely expected. It's . . . not evidence . . . that he was intoxicated in any way." The prosecutor, in her closing argument, mentioned the expansive definition of intoxication, but she also expressly told the jury that the portion of the definition referencing alcohol "does not apply in this case," that the portion of the definition referencing a controlled substance "does apply," and that the portion referencing a drug "also applies." She then proceeded to focus her argument on the evidence related to alprazolam and blood pressure medicine, concluding with Bode's admissions involving both of those drugs. She did not argue that Bode had alcohol, a dangerous drug, or any other substance in his blood. This factor weighs against a finding of egregious harm. *See id.* at *7.

Finally, regarding any other relevant information in the record, during voir dire, the prosecutor mentioned the expansive definition of intoxication but focused her discussion on the intoxicating effects of prescription medicine rather than other substances, which was consistent with the evidence that the State would present during trial. This factor weighs against a finding of egregious harm.

In sum, although the first factor weighs in favor of a finding of egregious harm, the second, third, and fourth factors weigh against such a finding. Accordingly, on this record, we cannot conclude that Bode was egregiously harmed by the erroneous definition of intoxication in the charge.

We overrule Bode's second issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   August 31, 2023

Do Not Publish

17